LAWRENCE v. TIMES PRINTING CO. et al.

(Circuit Court, D. Washington, N. D.    October 31, 1898.)

1. EQUITY JURISDICTION — MORTGAGE OF GOOD WILL AND FRANCHISES OF NEWSPAPER—ENFORCING RIGHTS OF PURCHASER.

A sale under a chattel mortgage covering a newspaper plant, and "the circulation, franchises, and good will thereof," vests the purchaser with the right to equitable relief against the mortgagor or its assigns, to the extent of restraining them from using the name of such newspaper, or from publishing and circulating a newspaper by the same or a different name as the newspaper or successor of the newspaper covered by the mortgage.

2. SAME—REMEDY AT LAW.

Books of a newspaper, containing the accounts and names of subscribers and patrons, being articles of which manual possession may be taken, may be recovered in an action at law, and a court of equity is without jurisdiction of a suit for that purpose.

3. JURISDICTION OF FEDERAL COURTS — SUIT IN REM—ASSOCIATED PRESS FRANCHISE.

A so-called "news franchise" of a newspaper, arising out of a contract with the Associated Press for furnishing its dispatches, although such contract provides that the privilege thereby granted may be transferred with the newspaper on condition that the purchaser will enter into a new and similar contract, implies that the assent of the Associated Press must be obtained to the new contract, and is merely a contract, which cannot, by any action of the newspaper, become property or the subject of a suit in rem, so as to support the jurisdiction of a federal court, under Rev. St. § 738.

4. SAME—NECESSARY PARTIES.

To a suit to establish and enforce the right of a purchaser of a newspaper to the Associated Press dispatches, under a franchise or contract held by the former publisher, the Associated Press is an indispensable party, as no decree could be effective which did not bind that corporation; and such a suit cannot be maintained in a federal court in a district of which neither the complainant nor such corporation is a resident or citizen.

This is a suit in equity by George C. Lawrence against the Times Printing Company and the Associated Press. Heard on demurrer to the bill by the Times Printing Company, and a plea to the jurisdiction by the Associated Press.

Ballinger, Ronald & Battle and Donworth & Howe, for plaintiff.

Bausman, Kelleher & Emory and Thomas Burke, for Times Printing Co.

Pratt & Riddle, for the Associated Press.

HANFORD, District Judge.   The complainant, a citizen of the state of Iowa, brings this suit against the Times Printing Company, a corporation of the state of Washington, and the Associated Press, a corporation of the state of Illinois. In his amended bill of complaint, the complainant sets forth in detail the history of a daily

newspaper published in the city of Seattle, under the names, successively, of the "Seattle Press-Times," "Seattle Times," "Seattle Evening Times," and. "Seattle Daily Times"; but it is sufficient for the purpose of this opinion to state the important facts briefly as follows: On the 9th day of March, 1895, there was a corporation called the "Seattle Press-Times Company," then engaged in the publication of said newspaper, under the name of the "Seattle Press-Times"; and on that day said company, to secure payment of an indebtedness amounting to $12,000, executed to John Collins a chattel mortgage covering all the printing-office material and appliances, together with the said newspaper plant, and the circulation, franchises, and good will thereof. At that time, the publishing company held a contract entitling it, as a member of the Associated Press, to receive and publish in said newspaper the day news collected by the Associated Press, which contract is in the pleadings called a "franchise." In the contract it is provided that the privilege granted thereby might be transferred with the said newspaper, provided the new proprietor should enter into a new contract with the Associated Press similar thereto. On the 27th of June, 1895, the Seattle Press-Times Company, by amendment of its articles of incorporation, became the Times Company; and on the 4th day of June, 1895, the Times Company entered into a new contract with the Associated Press, which was merely a substitute for the franchise contract previously owned by the company. In the month of June, 1897, a new corporation was organized, called the Times Printing Company, which is one of the defendants herein, said new company having the same officers as the Times Company; and all of said mortgaged property, including the newspaper plant, with its franchises, good will, and circulation, was transferred from the Times Company to said defendant, and again there was a substitution of a new contract between the Associated Press and the Times Printing Company, in place of the franchise contract theretofore held by the Times Company. The chattel mortgage was assigned to one Gilliland, who obtained a decree of foreclosure, and in the month of February, 1898, became the purchaser of all the mortgaged property at a sale thereof made by the sheriff of King county, pursuant to the decree of foreclosure; and the complainant is his vendee and assignee as to said property, with all his rights as purchaser thereof at the foreclosure sale. The defendant the Times Printing Company is in possession of, and withholds from the plaintiff, the books containing the names of subscribers and patrons of said newspaper, and the books of account belonging to said newspaper plant, and is in enjoyment of a monopoly in obtaining and publishing day news under the franchise contract with the Associated Press. The complainant avers that he is the owner and is entitled to have possession of said books of circulation and accounts, and entitled to enjoy the privilege of receiving and publishing the day news furnished by the Associated Press, and that he wishes to continue publication in the city of Seattle of the daily newspaper which was covered by said mortgage. The defendant the Times Printing Company has demurred to said amended com-

plaint, and the other defendant, the Associated Press, has interposed a plea to the jurisdiction. The jurisdiction of the court to adjudicate as to the rights of the parties under the franchise contract with the Associated Press is denied by the demurrer of the Times Printing Company, and also by the plea of the other defendant, on the ground that the Associated Press is an indispensable party; and, as the only ground for invoking the jurisdiction of a federal court is diversity of citizenship, the Associated Press cannot be made a defendant in a suit originally commenced in a United States circuit court, except "in the district of the residence, either of the plaintiff or the defendant."

In their argument in support of the jurisdiction of this court, counsel for the complainant insists that this is not a suit to enforce a personal liability, but rather a suit founded upon a claim to specific property situated within this district, and that the right to bring the suit in this court is given by section 738, Rev. St. U. S., which section provides:

"That when in any suit commenced in any circuit court of the United States, to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear. * * *"

They say that the complainant asserts ownership and legal title to the franchise in question, but that, through the fraud of the respondent the Times Printing Company, the possession and enjoyment of his property rights in this and other valuable things, such as the good will, name, etc., of said newspaper, are unlawfully withheld from him; that the conduct of the Times Printing Company in the particulars alleged in effect places that company legally in the attitude of a trustee ex maleficio, or a transferee under a fraudulent conveyance holding the property for the real owner. Their argument rests upon the proposition that the franchise, the good will, the name, and the circulation of the newspaper are specific articles of property, capable of being transferred and reduced to possession by the acts of the parties, and that said property has a legal situs within this district, and is therefore within the jurisdiction of this court, so that the court may, by its decree, enjoin the mala fide holder from using the same, and also protect the rightful owner in the exclusive use and enjoyment thereof.

As at present advised, I hold to the opinion that, upon the face of the bill of complaint, enough appears to entitle the complainant to equitable relief against the Times Printing Company, to the extent of restraining said defendant from using the name of the newspaper of which the complainant became proprietor by the foreclosure sale, and from publishing and circulating a newspaper by the same or a different name as the newspaper, or successor of the newspaper, which was a substantial part of the property covered by the mortgage.

As to the books containing accounts and names of subscribers and patrons of the newspaper, they are articles of which manual

possession may be taken, and which may therefore be recovered in an action at law. Therefore a court of equity is without jurisdiction to assist the complainant in recovering possession of said property.

As to the so-called "franchise," I find that to be merely a contract creating an obligation and a right, in no wise different in character from any other simple contract by which one party agrees for a consideration to serve another for a definite period. The Associated Press is a news gatherer. Its business is to be diligent in collecting information as to matters of public interest, and to communicate such information as it collects to the publishers of different newspapers promptly. Because of the extensive facilities which it has for gathering news, and its superior facilities for transmitting the same promptly, the right to receive and publish the information which it can supply is valuable to the publisher of a newspaper. It is more valuable than a right which a newspaper might acquire by a contract with one of its individual reporters, securing for a definite period his time and talents, to be devoted exclusively to the work of gathering news, because the Associated Press is an aggregation of reporters; but the difference is in degree, and not in kind. I find no ground in reason nor support in any precedent for the argument that a right to the service of another becomes converted into property which may be the subject of a suit in rem, by any mysterious operation or force emanating from the mere fact that the person obligated to render the service is an artificial being, having a greater number of eyes, ears, legs, and hands than belong to a natural person. It may be fairly inferred from the averments of the bill of complaint, in connection with the substituted contract annexed thereto as an exhibit, that the Associated Press claims the right to pass upon the eligibility of newspaper publishers to become its associates and correspondents, and to become entitled to the privileges granted by the contracts which it makes for furnishing news. It is provided in the contract that the privilege can only be disposed of incidentally with the sale of the newspaper, and upon condition that the purchaser will enter into a new contract of similar import. As a new contract cannot be made without the assent of the parties, this implies that the purchaser may be rejected by the Associated Press, and refused the privileges granted by the contract. Part of the consideration for the service of the Associated Press in furnishing news to a newspaper is the agreement of the publisher of the paper to furnish news to the Associated Press. The association may well say that each contract requires the exercise of its right of choice; for the diligence and faithfulness of one party may be considered a fair compensation for the exclusive right to receive Associated Press news; but the vendee of that party may be entirely incompetent or negligent or unwilling to perform his part of the contract. In its opinion in a somewhat similar case, the supreme court say:

"Apparently the association had the right to accord or deny the privilege of membership as it saw fit, and whether its action in the admission of the new corporation was wholly independent of certificate No. 38, or based upon

the substitution of one share for the other, it would seem to follow, upon the assumption that a membership could be pledged or mortgaged without its consent, that the association was directly interested in the contention raised by the complainant in respect of that action, and that the circuit court was right in holding that the question ought not to be determined in the absence of the association as a party." Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 450, 13 Sup. Ct. 949.

A decree of this court in favor of the complainant will be entirely barren of beneficial results unless the court shall pronounce definitely that the complainant is the only party entitled to receive from the Associated Press, and publish at Seattle, the day news which it furnishes. To so pronounce is the same thing as to decree that the Associated Press is obligated to the complainant to furnish the news to him at Seattle for publication in a newspaper. Logically and legally, the right of one party to receive a benefit from another cannot exist unless the opposite party is obligated to render the benefit. The right and the obligation are so inseparable that, when the obligated party is not within jurisdiction of the court, there can be no such thing as an adjudication in favor of the party claiming a right. If a right to the service of another may be called "property," still it has no physical existence or situs. It cannot be seized or handled by an officer of any court. The only known method by which it can be subjected to judicial process is pressure directly upon, and coercion of, the party obligated to serve; and, of course, the party to be coerced must be caught first. The rule of the federal courts in regard to indispensable parties is well stated by Judge Caldwell in the opinion of the court in the case of Chadbourne v. Coe, 51 Fed. 479, as follows:

"Indispensable parties are those who not only have an interest in the subject-matter of the controversy, but an interest of such a nature that a final decree cannot be made without either affecting their interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. Shields v. Barrow, 17 How. 139; Ribon v. Railroad Co., 16 Wall. 450; Coiron v. Millaudon, 19 How. 113; Williams v. Bankhead, 19 Wall. 563; Kendig v. Dean, 97 U. S. 423; Alexander v. Horner, 1 McCrary, 634, Fed. Cas. No. 169."

By this rule, the Associated Press is certainly an indispensable party to any proceeding intended to secure to the complainant the rights which he claims under the so-called "franchise contract"; for judgment in his favor must bind the Associated Press, or else leave the question as to the obligation of that corporation to furnish its dispatches to him entirely open and undetermined. As said defendant will not waive its privilege of exemption from being sued in this court by a citizen of the state of Iowa, the court is without jurisdiction to take cognizance of the questions at issue as to the rights of any of the parties under said contract.

The only matter at stake which may be the subject of a controversy within the jurisdiction of this court as a court of equity is the name and good will of the newspaper, and the right of the complainant to restrain the Times Printing Company from the use and enjoyment thereof; but the controversy as to these rights is not cognizable in this court, unless it is claimed that the value thereof exceeds the sum of $2,000. Until this is made to appear affirma-

tively upon the face of the record, the court is without jurisdiction to proceed.

For the foregoing reasons, both the plea and the demurrer are sustained; and, unless the complainant shall apply for leave to amend the bill, the suit will be dismissed.