## BARBOUR v. GEORGE et al.
### No. 5673.

Circuit Court of Appeals, Seventh Circuit.

June 2, 1936.

Harry G. Hershenson, of Chicago, Ill., and Harold M. Shapero, of Detroit, Mich., for appellant.

John K. Newhall and David B. Givler, both of Aurora, Ill., and Cassius Poust, of Sycamore, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Appellant brought this suit as the surviving husband to recover a share of the estate of Fannie Henderson, deceased, and to obtain a decree adjudging him to be the sole heir at law and next of kin of the decedent with right to accounting as against appellee, trustee named in the will of said deceased, and for other relief. The right to recover was predicated upon an allegation that appellant was the husband of the decedent.

To establish this status, he asserted a common law marriage in Michigan, valid in Illinois. Illinois does not recognize common law marriages performed in said state. Smith-Hurd Ill.Ann.Stats., c. 89, § 4.

Appellee denied that a so-called marriage ceremony in Detroit, such as was described by appellant's witnesses, had been performed. Appellee also denied the subsequent cohabitation of the parties in Michigan and asserted that such acts, if proved, did not establish the status of husband and wife. Smith-Hurd Ill.Ann.Stats., c. 89, § 19.

There was evidence tending to show that the contracting parties went through what is termed a common law marriage ceremony in the presence of two witnesses at Detroit, Michigan, on Sunday, August 16, 1925, and that they thereafter cohabited as husband and wife. Numerous witnesses testified to admissions made by decedent to them which tended to establish both the marriage ceremony and the cohabitation.

Appellees, on the other hand, offered much testimony, the substance and effect of which were to disprove the asserted marriage ceremony as well as the subsequent cohabitation of the parties as husband and wife. Appellees also attempted to discredit the testimony of witnesses who testified for appellant. In some instances the impeachment was thorough.

At the close of the trial the judge filed a memorandum setting forth his views upon the vital issues in the case and later made findings of fact in appellees' favor.

We deem it unnecessary to consider the effect of the Illinois statute (Smith-Hurd Ill.Ann.Stats., c. 89, §§ 4, 19) upon a secret common law marriage in Michigan. It is sufficient to observe that in our opinion the evidence in the case supports the findings of the trial judge and for that reason the decree must be affirmed. Judge Barnes gave a statement of his reasons for his finding that the asserted marriage ceremony never occurred. They are persuasive.

We are not required to pass on this question of fact as an original proposition, but merely to search the record to ascertain whether there is substantial factual support for it.

It would not be helpful to detail all the testimony which tends to support or to dispute the appellant's assertion of marriage. While there were witnesses who testified directly to the marriage ceremony and to

some cohabitation thereafter, there is also evidence·which tends to discredit these witnesses and their story.

Appellant's story, while not impossible, was highly improbable. He did not testify, but his witnesses described a most ardent courtship on the part of decedent, past 72, which lasted nearly a week and which swept him off his feet and left him without power of resistance. He was about 34 years of age at the time, and was studying law.

■ The story is not a pleasant one. It is disagreeable to discuss. The determinative issue is one of fact. The trial judge saw and heard the witnesses. The findings by him made are binding on us if support therefor may be found in the evidence. Aside from the persuasive influence of these findings, we have reached the same conclusion from our study of the evidence.

■ Elaboration of the reasons which impel us to the same conclusion as was reached by the District Court will not be attempted. The following facts are so significant that they carry their own convincement and comment is unnecessary.

Decedent was 72 years of age and appellant, 33 or 34, when the asserted marriage occurred. Decedent lived six years thereafter and died testate leaving a large estate. She did not mention appellant in her will. No written document could be produced by appellant or anyone else wherein she referred to him as her husband or suggested or intimated that she was or ever had been married to him. Deceased always signed her name, Fannie Henderson. When making trips in the summer appellant acted as her chauffeur, and they stopped at various hotels and other places. Each registered in his or her own name—she as Henderson, and he as Barbour. They engaged separate rooms at all hotels. Although as a chauffeur, appellant lived several months in Aurora—the lifelong home of deceased—she never informed her old friends of any marriage to appellant. When she died, no one in Aurora had ever heard of this marriage or of the existence of a husband. To the last two sentences there is to be noted an exception, but the witnesses who constituted the exception were employees or relatives of the deceased and were deeply disappointed by her will and the outcome of the will contest. The trial court, as we now do, rejected their testimony.

Testimony coming from appellant's side is also persuasive of the correctness of the court's finding. Appellant did not testify. The inference is that he did not care to face a cross-examination. No written document was produced wherein he asserted the existence of the marriage or the relation of husband and wife prior to the deceased's death. In his presence and to his knowledge, deceased signed her name Henderson. Never did she adopt his name. In no hotel did he ever register her as his wife. Never did they register for a single room. After her death he wrote the executor annoying, anonymous letters, which fact reflects discredibility on him. In none of them, however, did he claim to be the husband of the deceased. Nor did he assert any right as the surviving husband of the deceased. After her death he claimed some personal property in one letter, to-wit, a revolver, boxes of shells, and a cleaning rod. These articles he requested the executor to send him, which was done. His silence and his failure to assert his rights as an heir are unexplained. He was an interested observer of the will contest and friendly to the contestants' side, but never asserted an interest in the estate. Not until after the bitter will contest was decided against the heirs and favorably to the charity and not until the heirs' disappointment was at white heat did he announce himself as the bereaved widower entitled to a husband's share of the estate which the said heirs had failed to capture. Evidence of liberal offers of reward to disappointed relatives who in return were by their testimony to advance his cause, completes the recital of appellant's misguided efforts. In a vain and futile effort he staked honor and truth in an effort to establish himself as the husband of one old enough to be his grandmother and whose lips sealed in death made it impossible for her to refute the story or denounce the unworthy aspirant to her estate as an ingrate who profaned the life of·a friend and. benefactor. The decree is

Affirmed.