## LAURSEN v. O'BRIEN.
### No. 6026.

Circuit Court of Appeals, Seventh Circuit.
May 20, 1937.

Rehearing Denied June 18, 1937.

Amos H. Englebeck, of Akron, Ohio, and Arthur Wickham, of Milwaukee, Wis., for appellant.

W. H. Frawley, V. M. Stolts, and W. H. Frawley, Jr., all of Eau Claire, Wis., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This appeal is from a judgment, upon verdict, rendered in an action upon an oral contract of employment wherein appellant was the employer and appellee the employee. The alleged agreement concerned the promotion of appellant's inventions by appellee and covered the period from January, 1922, to July, 1926. After an extended trial wherein both appellant and appellee appeared as witnesses, the jury rendered a verdict for $10,000 for appellee, to which the court added interest.

At the close of the evidence appellee elected to seek a recovery upon a *quantum meruit* basis—for services rendered. This was because the alleged oral contract was void in view of the Wisconsin Statute of Frauds (St.Wis.1935, § 241.02).

The invention, the promotion of which was the goal of the services rendered, concerns a "Process of and Apparatus for Making Rubber Tubes with Tapered Ends."

(Patent No. 1,530,128, applied for March 5, 1924, issued March 17, 1925.)

The evidence was sharply controverted and previous litigation in the Sixth Circuit [Laursen v. Lowe (C.C.A.) 46 F.(2d) 303], wherein appellant and one Lowe were the parties, supplied additional issues. That was an equity suit for an accounting—a suit for compensation of services rendered for promoting sales under appellant's above-mentioned patent. Appellee was a witness and held an employment contract with Lowe from which it appeared Lowe was to share the compensation by him received from appellant with O'Brien.

The legal issues are no less complicated than the facts and involve *inter alia: res adjudicata,* because of privity (in connection with the Sixth Circuit suit); estoppel, laches in institution and prosecution of the suit; sufficiency of the evidence to go to the jury or to support the verdict; lack of right to recover *quantum meruit;* lack of right to sue because of appellee's adjudication as a bankrupt in 1924; loss of right to recover interest on judgment because of laches; rulings on appellant's several motions during trial.

Appellant **is** a resident of Ohio and appellee, of Wisconsin. They had been identified in other ventures, appellee as promoter and stock salesman for U. S. Auto Gear Shift Co. and Gillette Rubber Co., and appellant as an inventor and stockholder and officer in such companies.

They cooperated in their respective capacities of promoter and inventor, to perfect a concrete pump. O'Brien claims to have secured permission for Laursen to use the laboratory facilities of Gillette Rubber Co. to produce a better pump for which a patent might be obtained. Thereafter, in 1922, so he claims, it was called to his attention that if a means of manufacturing tubes and tires without the use of "rags" (to secure beveled edges on the tubes during vulcanization) could be devised, such discovery would materially reduce manufacturing costs and would be of great value. O'Brien persuaded Laursen to substitute this problem for his study of pumps. O'Brien again secured for Laursen the use of the laboratory and equipment of Gillette Rubber Co. and the cooperation of its employees. A means was thereafter provided for obviating the use of "rags." (It is hereafter described in greater detail.) O'Brien claims that he was the originator of the "idea"

covered by the patent, but Laursen claimed it and secured a patent thereon. O'Brien contends that Laursen agreed to pay him a sum equal to his losses in two other ventures in which they had been interested, and which had failed. This loss was claimed to be $250,000.

The exact services which O'Brien performed are somewhat hazily described, but they included the showing of the patented invention to possible licensees and extolling its merits. At least six licenses were executed under this patent. Appellant received $900,000 in royalties from these licenses. O'Brien was, according to some evidence, in constant contact with the Gillette Company and aided in maintaining the amicable relations between the parties. He testified that he was employed by no one else during the period of the contract, and that he devoted all his time to Laursen's interests. Contradiction of this unswerving devotion to Laursen's interests appears · in O'Brien's income tax returns for the period in question. Amounts, ranging from $419 to $5,076, annually, were reported as earnings from other employments.

O'Brien received no payment from Laursen (except $100) for services during the period in question. He received $4,328.72 between December 24, 1923, and May 8, 1924, from Lowe.

In his previous employments O'Brien had sold huge blocks of stock of the corporations which he was promoting and in which Laursen was interested.

The invention which forms the basis of this litigation concerns the means of making a beveled or sloping end of a rubber tube, during the process of vulcanizing the rubber. A sheet of rubber is placed around a pole or mandrel. Previously, rags were tied around the end of the tube to hold the sheet of rubber tightly against the pole. The rubber becomes soft during vulcanization, and therefore at the places of pressure it assumes a thinner shape. Heretofore steam had been used in the process of vulcanization. The Laursen process, however, utilizes hot water. It is asserted to be a more satisfactory means of complete and uniform vulcanization. Also, the Laursen process substitutes for the rag pressure, a rubber constrictor which is cut from a flat rubber sheet in the shape of a doughnut. This rubber constrictor is placed over the rubber tubing after it is on the mandrel, and effectively holds the tubing tightly to the pole and at the same time molds the

end of the tubing into a beveled end. It is a very simple idea, and its patentability is not before us, nor does the outcome of this litigation depend upon the validity of the patent. The fact that six large companies have taken license contracts with substantial royalty payments based on number of tubes manufactured is material as bearing on the value of O'Brien's services, if recovery be permitted.

In the Ohio litigation the Sixth Circuit reversed an accounting decree against Laursen. In that suit Lowe sought compensation for services for promoting Laursen's inventions. The District Court found in his favor, but the Court of Appeals held that Lowe had not established his right to compensation. There was no denial of the existence of a contract-employment relationship.

It is argued that O'Brien's relation to the Lowe litigation bars his right to recover in this action. O'Brien was a witness, but not a party. There is no evidence of his having shared the expense of the litigation. The evidence, here and there, points to several possibilities of relationship between O'Brien and Lowe, to-wit: each an employee of Laursen; Lowe, the employee of Laursen, and O'Brien, the employee of Lowe; Lowe and O'Brien, joint contractors with Laursen; O'Brien, a double employee of Laursen, one in a several capacity and one in a joint capacity with Lowe. The Sixth Circuit did not decide the terms of this initial contract inasmuch as it held the conditions precedent to recover were not proven.

Laursen filed a plea in abatement in the instant case on the ground that the cause of action, if any, did not lie in O'Brien, but in the trustee of his estate in bankruptcy. O'Brien, although admitting an adjudication in voluntary bankruptcy, argues that the cause of action remained in him because no trustee of his estate was ever appointed.

The evidence in this case is in hopeless conflict. This conflict extends to nearly every fact in the case and to numerous witnesses other than the parties to the action. There is no reconciling the conflicting stories. The District Court's incisive observation, "I would not believe either the plaintiff or the defendant under oath, but the jury has, in a measure at least, accepted the plaintiff's story as true," quite adequately describes the state of the record.

The District Judge, in his instructions to the jury, pointed out the inconsistencies in the evidence: the discrepancy between the evidence in the Sixth Circuit case and the instant case; O'Brien's return of income from other sources in his state income tax returns; the petition in bankruptcy, etc. He told the jury that if they found O'Brien did nothing other than under the so-called joint contract with Lowe, they should find for the appellant, but if they found other services were performed outside the scope of the joint contract, they might find for O'Brien for the reasonable value of such services.

■ 1. *Res Adjudicata.* It is Laursen's contention that the Sixth Circuit's decision adverse to Lowe is *res adjudicata,* inasmuch as O'Brien had some sort of a joint contract with Lowe and so was financially interested in the outcome of that suit. O'Brien, on the other hand, contends that even though there were a joint contract, the other litigation would not bar his recovery for here he is seeking compensation for services performed two years before and two years after the period covered by said joint contract.

The District Court correctly held that for services rendered outside the joint contract, the judgment of the Lowe litigation was no bar.

■ Appellant challenges the appellee's right to sue for *quantum meruit* after having sued for breach of contract or for an accounting on the same cause of action. Here again the contention is completely answered by the fact that the jury found that the cause of action was not the same in the two suits.

■ 2. *Bankruptcy as bar to O'Brien's instant suit.* O'Brien was adjudged a voluntary bankrupt on July 24th, 1924. There was evidence that he fully disclosed to the court, his attorney, and the creditors the nature of his contract with Laursen, and they decided not to pursue his cause of action against Laursen.

Where no trustee is appointed and there is no fraud by the bankrupt, an existing cause of action in the debtor, such as here asserted, may be prosecuted by him. Danciger v. Smith, 276 U.S. 542, 48 S.Ct. 344, 72 L.Ed. 691.

■ 3. *Laches.* The contract was alleged to have been made in January, 1922, and terminated in July, 1926. The com-

plaint in the instant suit was filed, December 31, 1932. The summons was placed in the hands of the sheriff, September 4, 1931.

Appellant insists the delay was greatly to his prejudice inasmuch as many material witnesses had died and the memory of those remaining had become dulled by lapse of time. It is hardly accurate to say that time *dulled* the witnesses' recollections. It seems to have freshened the memories of some of them.

Appellant has not resided in Wisconsin since 1926. Section 330.30 of the Wisconsin Statutes tolls the statute while a defendant is out of the state. Appellee also claims that Laursen after 1926 recognized his liability and promised to fulfil his obligation. There were some offers of settlement by O'Brien to Laursen in the interim. It also appears that appellee was ill during some of the intervening time.

The issue of *laches* was one which called for the exercise of the sound discretion by the trial court. 10 R.C.L., Equity, § 146; Harwood v. Cincinnati Co., 17 Wall. 78, 21 L.Ed. 558; Brown v. County of Buena Vista, 95 U.S. 157, 24 L.Ed. 422; 5 Corpus Juris Secundum, Appeal and Error, § 1583, p. 475; Leathers v. Stewart, 108 Me. 96, 79 A. 16, Ann.Cas.1913B, 366. We find no abuse of discretion by the trial court.

■ 4. *Recovery on Quantum Meruit Basis.* Appellant's contention that O'Brien cannot recover on a *quantum meruit* basis is answered by Winton v. Amos, 255 U.S. 373, 41 S.Ct. 342, 350, 65 L.Ed. 684, where the court said:

"Services not gratuitous, and neither *mala in se* nor *mala prohibita,* rendered under a contract that is invalid or unenforceable, may furnish a basis for an implied or constructive contract to pay their reasonable value."

In 76 A.L.R. 1412, this note appears:

"Where a contract under which services or materials are furnished is unenforceable for noncompliance with the Statute of Frauds, or for any other reason * * * it is the well settled rule that the person who furnishes the services or the materials may recover the value thereof upon a *quantum meruit* basis."

■ Finally, it must be observed, that we, as an appellate tribunal, may not, where there is conflicting evidence, substitute our judgment for that of the jury, and must accept as verities the facts by them found,

unless all reasonable men, exercising an unprejudiced judgment, would reach an opposite conclusion from the facts. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; New York Life Ins. Co. v. Kassly (C.C.A.) 87 F.(2d) 236; Barbour v. George (C.C.A.) 84 F.(2d) 281; U. S. v. Huddleston (C.C.A.) 81 F.(2d) 593. In the instant case there was evidence which persuasively supported the verdict. Appellee testified at length in substantiation of his many services over a period of years, and there was some corroboration by disinterested witnesses. Some of the testimony is fantastical and flimsy, but its weight was for the jury to determine.

We have examined the other assignments of error, but do not feel that they merit separate discussion.

The judgment is
Affirmed.