**KOHAGEN et al. v. HARWOOD et al.**

No. 10209.

United States Court of Appeals
Seventh Circuit.

Argued Oct. 23, 1950.

Decided Nov. 30, 1950.

M. E. Culhane, Minneapolis, Minn., John J. Burke, Milwaukee, Wis., A. E. Bryngelson, Minneapolis, Minn., for appellants.

Benedict Deinard, Minneapolis, Minn., Robert A. Hess, Merle W. Hillis, Milwaukee, Wis., Thomas J. Linane, Chicago, Ill., for respondents.

Before MAJOR, Chief Judge and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

The complaint in this action discloses that plaintiffs and each of them are citizens and residents of the State of Minnesota. The defendant James R. Moore is a citizen and resident of the State of Wisconsin; the defendant Hamilton Manufacturing Company (hereinafter referred to as Hamilton) is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in that State; the defendant Stanley Harwood (hereinafter referred to as Harwood) is a citizen and resident of the State of California, and the defendant Imperial Appliance Corporation (hereinafter referred to as Imperial) is a corporation organized under the laws of the State of Illinois, with its principal place of business at Chicago, Illinois. With this diversity of citizenship alleged, together with the requisite jurisdictional amount, the District Court, on July 20, 1949, upon petition of the plaintiffs, acting under Title 28 U.S.C.A. § 1655, entered an order that the non-resident defendants Harwood and Imperial appear and answer the complaint theretofore filed by the plaintiffs. Each of such defendants appeared specially and challenged the jurisdiction of the court on the ground that they were not citizens or inhabitants of the State of Wisconsin and that it appeared from the face of the complaint that the action stated was not within the terms of Sec. 1655. After hearing, the District Court rendered its memorandum opinion and, on May 18, 1950, entered an order vacating

its previous order dated July 20, 1949, quashed the alleged service theretofore had upon Harwood and Imperial and directed that their names be stricken as parties to the action. It is from this order that the appeal comes to this court.

The facts as disclosed by the complaint are as follows: Prior to October 1937, Moore invented a clothes drying machine for which a United States patent issued to him or his assignees. Plaintiffs purchased from Moore and "became the owners of an interest in any royalties that might be derived from the manufacture and sale of such clothes drying machine," as follows: Kohagen, a 20% interest, Armonies, a 20% interest, Trucker, a 10% interest. J. G. Callahan, now deceased, purchased a 15% interest, which was inherited by the plaintiff Georgiana Callahan. The three plaintiffs still own the interest as purchased and the plaintiff Callahan is the owner of the interest acquired by inheritance.

In November 1938, Moore assigned to one Griswold all interest in the invention, for which Griswold agreed to pay a royalty of $3.00 for each machine manufactured and sold. Shortly thereafter and in the same month, Griswold contracted with Hamilton through its agent Imperial for the manufacture and sale of the dryers, who agreed to pay a like royalty for each machine manufactured and sold. Upon information and belief it was alleged that Hamilton has manufactured and sold over 15,000 of such dryers, not less than 2,000 of which were manufactured and sold prior to January 1, 1944.

In February 1939, Griswold assigned all his rights in the invention and in the royalty contract to Harwood. All of the defendants, so it is alleged, had notice prior to such assignment of plaintiffs' interest acquired as heretofore set forth. None of the plaintiffs has received any portion of the royalties to be paid by Hamilton.

Plaintiffs pray (1) that their interest and ownership in the royalties paid and to be paid by Hamilton be determined, (2) that each of the defendants be required to account to the plaintiffs for any and all royalties that have accrued and to pay to each plaintiff his or her share thereof, (3) that Hamilton be restrained from hereafter paying to either the defendants or others any portion of the royalties belonging to the plaintiffs that "may hereinafter accrue," and (4) for such other relief as may be just and equitable.

Plaintiffs contend "that the royalty to be paid by Hamilton was within the meaning of Section 1655 a res in the Eastern District of Wisconsin to which the court had jurisdiction to determine plaintiffs' rights and ownership." Notwithstanding the issue thus stated, plaintiffs state as a proposition of law "That while an action to recover from Hamilton any royalty might be in personam and not within Section 1655, an action to have determined the interest or partial ownership of plaintiffs in such royalty would come within the provisions of Section 1655."

Defendants contend that the issue is "whether or not the complaint shows that plaintiffs seek to enforce a lien upon, or claim to, 'personal property' located in the Eastern District of Wisconsin, so as to permit substituted service" under Sec. 1655 on the defendants Harwood and Imperial, who are non-residents.

Sec. 1655 is entitled "Lien enforcement; absent defendants". The provisions of this section, in substance, have been in effect since 1875. The first paragraph provides: "In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain."

The second paragraph provides for service upon an absent defendant and "also upon the person or persons in possession or charge of such property, if any" (referring to "property within the district"). The third paragraph provides for the procedure against an absent defendant who shall fail to appear, and provides that any adjudication as regards such defendant shall "affect only the property which is the subject of the action." Plaintiffs disclaim any purpose "to enforce any lien" or to

278

"remove any incumbrance or lien or cloud upon the title", but urge that they have stated a "claim to * * * personal property within the district". ·

The District Court, in deciding adversely to plaintiffs, stated: "Not only do the allegations of the complaint as set forth earlier in this opinion clearly demonstrate that the instant suit does not involve a claim to specific property, but the prayer for relief also gives ample evidence to the same effect."

With this conclusion we agree. The most favorable view which can be had of the right which plaintiffs assert is that they are entitled to recover a judgment against Hamilton in an undisclosed amount for royalties upon dryers manufactured and sold by it. There is no allegation that there are any accrued royalties in the possession or custody of Hamilton or within the jurisdiction of the court. For aught that appears, all earned royalties have been paid by Hamilton to Harwood under its contract with the latter. And it is no help to plaintiffs' position, even though it be assumed that Hamilton has wrongfully paid to Harwood royalties, a portion of which the plaintiffs were entitled to, because, even so, the money or funds used in the payment of such royalties is not within the jurisdiction of the court. It seems to us that the maximum relief to which plaintiffs might be entitled as against Hamilton would be a personal judgment against it for accrued royalties, whether unpaid and in its possession or wrongfully paid to some other party.

Plaintiffs concede that an action to recover royalties against Hamilton is not within Sec. 1655, but argue that "an action to have determined the interest or partial ownership of plaintiffs in such royalty" would come within the statute.

The mere statement of such contention refutes the theory that they have a "claim" (as that word is used in the statute) upon "personal property" located in the district. In fact, all that plaintiffs have is a law suit wherein they may or may not be able to establish a right and this situation is emphasized by plaintiffs' prayer for relief. They pray as in a suit for a declaratory judgment that their interest in the royalties be determined and that the defendants be required to account. And it is of no assistance to plaintiffs to point out, as they do, the dictionary definition of the term "claim" or the meaning to be attributed to it when used in other statutory provisions and under other circumstances.

■ As used in the instant situation, the "claim" must be upon property located within the court's jurisdiction, capable of being taken over or possessed by the court. As stated in Critchton v. Wingfield, 258 U.S. 66, 74, 42 S.Ct. 229, 231, 66 L.Ed. 467: "Used in this connection, personal property undoubtedly refers to such as is lawfully localized within the district, and there held and enjoyed, and thus made subject to the court's jurisdiction to clear its title from clouds and liens, notwithstanding personal service within the district cannot be obtained upon those setting up adverse interests. It is the presence of property real or personal within the district which confers the limited jurisdiction * * *."

To the same effect is the earlier case of Chase v. Wetzlar, 225 U.S. 79, 88, 32 S. Ct. 659, 663, 56 L.Ed. 990, wherein the court stated: "It requires no close analysis to sustain the interpretation given by the court below to the statute, viz., that it exclusively deals with property which is within the district where a suit is brought, and which property is therefore capable of being made subject to the dominion and resulting control of the court."

In McQuillen et al. v. National Cash Register Co., et al., 4 Cir., 112 F.2d 877, 880, the court employed the following test: "* * * the proceeding must be in aid of some pre-existing claim, existing prior to the suit in question, and not a proceeding to create for the first time a claim to the property as the effect of the proceeding itself; * * * the property in question must have a situs within the district in which suit is brought in a federal district court."

In Vidal v. South American Securities Co. et al., 2 Cir., 276 F. 855, 873, it was held that a suit to enforce the payment of a debt and for an accounting was insufficient to show a lien or claim upon property·

within the district. In Wabash R. Co. v. West Side Belt R. Co., D.C., 235 F. 645, 647, it was held that a chose in action which disclosed a debt owing by a citizen of the district to a non-resident debtor was not property within the meaning of the statute. In Standard Gas Power Co. of Georgia v. Standard Gas Power Co. of Delaware et al., D.C., 224 F. 990, 992, it was held that a patent right was not such "real or personal property" as would come within the statute. In Dan Cohen Realty Co. v. National Savings & Trust Co. et al., 6 Cir., 125 F.2d 288, it was held that a suit to enforce a contract for the conveyance of land was a proceeding "in personam" and not "in rem," and that such an action did not involve a claim on property within the district. In Lawrence v. Times Printing Co. et al., C.C., 90 F. 24, 27, it was held that a "franchise" was merely a contract creating an obligation and a right and that it did not constitute property as that term is used in the statute.

All the above cited cases involve the statute under consideration or predecessor provisions containing similar language. There are numerous other cases where the statute was not involved but which support defendants' contention that plaintiffs' asserted right to royalties does not constitute property within the district. For instance, in Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 497, 43 S.Ct. 454, 455, 67 L.Ed. 763, the court stated: "But an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property, and although the debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due course."

In Kline et al. v. Burke Construction Co., 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226, the court stated: "But a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing * * *."

In Byrd-Frost, Inc. v. Elder et al., 5 Cir., 93 F.2d 30, 32, 115 A.L.R. 342, the court, in distinguishing between a suit in rem and one in personam, stated: "The agreement rests entirely upon the promise in personam of Byrd-Frost to be 'bound and obligated' for a sum of money 'equal to' the amount collected by it. It is upon this personal obligation that plaintiffs here sue. They seek to recover, not a specific fund, but a general money judgment. The character of the suit is not altered by the fact that Byrd-Frost voluntarily segregated the monies in a separate fund."

No good purpose could be served in citing and discussing the numerous cases relied upon by plaintiffs. It may be said of them generally that the instant statute was not under consideration, or that they are against the manifest weight of authority. The three cases most relied upon are Brooklyn Trust Co. v. Kelby et al., 2 Cir., 134 F.2d 105, Spellman v. Sullivan et al., 2 Cir., 61 F.2d 787, and Omaha National Bank v. Federal Reserve Bank, 8 Cir., 26 F.2d 884. It is true the court in the Brooklyn Trust Company case, 134 F.2d at page 116, made a statement which, if embraced, is of benefit to plaintiffs' contention. However, the matter before the court concerned a reorganization proceeding in bankruptcy and the power of the court to compel the trustee to restore trust assets. Thus the statement relative to the statute now under consideration is not only dictum but contrary to the weight of authority. In the Spellman case, it was held that service was properly had on an absent judgment debtor who had an interest in the income of a trust fund held by a bank located within the jurisdiction of the court. As the court stated, 61 F.2d at page 789: "Here the property against which the lien was asserted was within the territorial limits of the District Court, and the appellee was asserting rights in personam against an absent defendant connected with property within the district. The court properly held this to be a judgment creditor's bill to enforce a claim against the income from the trust and that it warranted service upon the absent judgment debtor by publication."

Thus, this case is more favorable to defendants' contention than that of plaintiffs. In the Omaha National Bank case, wherein the court held that a non-resident defendant was properly served, there was a

res, that is, a bank deposit within the jurisdiction of the court. This holding appears not inconsistent with the weight of authority in that there was personal property within the court's jurisdiction upon which its process might attach.

It is, therefore, our view and we so hold that substituted service was improperly obtained upon Harwood and Imperial and that the court properly quashed the service as to them. The order appealed from is, therefore,

Affirmed.