253 F.2d 526
 Violet Virginia Kohagen BORIS, Administratrix D.B.N.C.T.A. of the Estate of F. C. Kohagen, Deceased, and Martha Armonies and Georgiana Callahan and Lyle Trucker, Plaintiffs-Appellants,
v.
HAMILTON MANUFACTURING COMPANY, a corporation, Defendant-Appellee.
 No. 12148.
 United States Court of Appeals Seventh Circuit.
 March 27, 1958.
 
 Michael L. Culhane, M. E. Culhane, James E. Culhane, Minneapolis, Minn., John J. Burke, Gerald P. Hayes, Milwaukee, Wis., for appellants.
 A. F. Rankin, Manitowoc, Wis., for appellee.
 Before SCHNACKENBERG and HASTINGS, Circuit Judges, and WHAM, District Judge.
 HASTINGS, Circuit Judge.
 
 
 1
 This was a diversity of citizenship action[1] brought to recover royalties under a patent and for an injunction and other equitable relief. The separate defense of laches was severed from the issues of liability and damages and tried before the court with resulting findings and conclusions favorable to Hamilton Manufacturing Company, defendant-appellee. From a judgment dismissing the action on the issue of laches as to this defendant, this appeal was taken.[2]
 
 
 2
 The ultimate issue now before the court is whether or not the trial court erred in holding that plaintiffs are barred by laches or estopped from asserting their claims against Hamilton. The general subject matter of this controversy has been the theme of varied litigation affecting several of these parties. The factual background goes back to about 1935. The issues of fact and of law in all of these controversies are rather complex and are the subject of continuing dispute. We shall content ourselves with an abbreviated statement sufficient to dispose of the single issue of laches here presented.
 
 
 3
 Prior to 1937, Moore invented a home clothes-drying machine for which letters patent were issued to him. Subsequently, and prior to October, 1937, plaintiffs (and those through whom some of them claim) acquired from Moore certain rights or interests in the royalties that might be derived from the manufacture and sale of the dryer. In April, 1937, plaintiffs (excepting Martha Armonies), Moore and others organized, incorporated and became shareholders in the Universal Dryer Co. for the purpose of exploiting the dryer. Moore contracted with Universal to make it his exclusive licensee. In the meantime, Moore and F. C. Kohagen had filed a joint application for letters patent on the dryer, which was subsequently abandoned by agreement, after which Moore filed his application as sole inventor of the dryer and pursuant to which such letters patent were issued to him. J. G. Callahan, president of Universal, (under whom one of the plaintiffs claims) died in October, 1937, and on December 4, 1937, the shareholders agreed to dissolve Universal and their rights were replaced by fractional interests in the royalties expected to be derived from a license granted by Moore to Storm Manufacturing Co., as exclusive licensee to manufacture and sell the dryer. Plaintiffs were made third party beneficiaries of the Storm Manufacturing Co. license in the same royalty percentages as alleged in their complaint. (Plaintiffs assert that they were not merely beneficiaries but were the outright owners of separate royalty interests.) In July, 1938, after a period of inactivity, the license to Storm Manufacturing Co. was cancelled. (Plaintiffs question the validity of this cancellation.) The next step of consequence was the assignment of his patent rights by Moore to F. W. Griswold on November 5, 1938. On November 9, 1938 Griswold licensed Imperial Appliance Corp. to manufacture and sell the dryer, and the next day Imperial sublicensed defendant-appellee, Hamilton Manufacturing Company, first to manufacture the dryer, and subsequently to manufacture and sell the dryers to jobbers and dealers, effective January 1, 1942. This contract with Imperial marked Hamilton's initial appearance into this situation.
 
 
 4
 Hamilton began to manufacture dryers during 1939 and continued to do so in an increasing number until 1943, when the war caused a curtailment in production and sales. Manufacture and sales were resumed substantially in 1946 and continued beyond the filing of the instant action on June 10, 1949. Royalty payments by Hamilton have been made, under its contracts, to persons other than plaintiffs.
 
 
 5
 In addition to the prior appeal to this court, supra note 1, we call attention to two other legal actions related to this controversy. In 1939, plaintiff Kohagen, with the assistance or knowledge of the other plaintiffs, filed an action against Moore and others in a Minnesota state court seeking to avoid the abandonment of the joint patent application made by Kohagen and Moore in 1936. This was determined adversely to Kohagen in 1941. In 1941, plaintiff Kohagen filed a patent interference proceeding against Moore in the United States Patent Office in which it was determined in 1944 that Kohagen was not an inventor or co-inventor with Moore. Hamilton was not a formal party to this proceeding but defended for Moore.
 
 
 6
 The foregoing recital was all set out in the court's findings of facts. In support of its conclusion that plaintiffs were guilty of laches, the court made other findings among which are the following: That at the time Hamilton first contracted with Imperial in 1938, Harry C. Gowran, as president of Hamilton, and Clarence Clago, as president of Imperial, were the principal negotiators, and both died prior to this action; that the records of Storm Manufacturing Co. (which had gone into bankruptcy) were not available; that when Hamilton assumed the manufacture of the dryer in 1938 the venture was speculative because the product was new and this dryer had not been developed to the point of commercial acceptance; that in its development, manufacture and sale of the dryer through 1946 Hamilton suffered a net loss of about $300,000, and that thereafter the venture became profitable; that Hamilton entered upon the exploitation of the dryer on the assumption that it was dealing with the exclusive licensee of the sole owner of the invention involved; that plaintiffs' rights (assumed as existent for the purpose of the laches issue) arose prior to October, 1937; that a delay of approximately ten years occurred between the time Hamilton first entered into its contract with Imperial until this action was commenced; that plaintiffs had notice of Hamilton's activity, and Hamilton had reason to believe that plaintiffs either acquiesced or had abandoned their claimed rights by their inaction; that plaintiffs offered no valid excuse for their delay in seeking to enforce their claimed rights; and that Hamilton had been prejudiced in its defense because of changed conditions arising from such lapse of time.
 
 
 7
 We have not attempted to set forth all of the findings and all of the factual situations, but it is sufficient to say that the foregoing gives ample support to the holding below sustaining the defense of laches. The record shows to our satisfaction that the findings are based upon substantial evidence and reasonable inferences to be drawn therefrom. Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. we cannot disturb them.
 
 
 8
 The determination of the defense of laches calls for the exercise of sound discretion by the trial court. Laursen v. O'Brien, 7 Cir., 1937, 90 F.2d 792, 795; Kimberly Corporation v. Hartley Pen Company, 9 Cir., 1956, 237 F.2d 294, 301. The holding of the trial court on the defense of laches will not be disturbed on appeal, unless it is so clearly wrong as to amount to an abuse of discretion. City of Erlanger v. Berkemeyer, 6 Cir., 1953, 207 F.2d 832, 840, 38 A.L. R.2d 918, certiorari denied 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411.
 
 
 9
 Mere delay does not constitute laches but when deferment of action to enforce claimed rights is prolonged and inexcusable and operates to defendant's material prejudice, we find laches to be an effectual bar, with the burden of satisfactory explanation devolving upon the plaintiff. Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 1943, 135 F.2d 617, 619. Laches is an equitable doctrine, not fixed by any unyielding measure, but to be determined in each case under its factual situation, and allowable "`where the enforcement of the asserted right would work injustice.'" Potash Co. of America v. International Minerals & Chemical Corp., 10 Cir., 1954, 213 F.2d 153, 155, and cases therein cited.
 
 
 10
 In Brennan v. Hawley Products Co., 7 Cir., 1950, 182 F.2d 945, a patent case, we upheld the defense of laches in a situation not entirely unlike the one at hand, invoking there the rules we had laid down in Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 1939, 104 F.2d 781. Cf. Wheatley v. Rex-Hide, Inc., 7 Cir., 1939, 102 F.2d 940. It follows that as to those found guilty of unreasonable delay in seeking to enforce their claimed rights to royalties under a patent, without satisfactory excuse or explanation of such delay and to the material prejudice of a licensee, having stood by while the licensee went through a period of unprofitable product development into a time of profitable production, conditions having changed in the meantime so that the licensee could not fairly defend against such royalty claims, the equitable defense of laches is properly held to bar and estop the further assertion of such rights.
 
 
 11
 The court below further found that were it not for the finding of laches it would have to dismiss this action for failure to join indispensable parties, but we do not reach that question under our holding herein. We have also examined the other allegations of error presented in appellants' brief, including certain rulings on evidence and find no prejudicial error therein.
 
 
 12
 We hold that the defense of laches was properly sustained in this case, and the judgment below is
 
 
 13
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The original plaintiffs, F. C. Kohagen, Martha Armonies, Georgiana Callahan and Lyle Trucker, filed their complaint on June 10, 1949, against James R. Moore, Stanley Harwood, Imperial Appliance Corporation and Hamilton Manufacturing Company. F. C. Kohagen died February 22, 1952, and Alma Alexandria Kohagen, executrix of his estate, was made a party plaintiff. Following her death on April 6, 1957, she was succeeded as a party plaintiff by Violet Virginia Kohagen Boris, administratrix d.b.n.c.t.a. of the estate of Fred C. Kohagen, deceased, who with the other three plaintiffs are appellants herein. Defendants, Stanley Harwood and Imperial Manufacturing Company were served outside the State of Wisconsin, and they appeared specially and challenged the court's jurisdiction over them. The district court sustained such special appearances, and, on appeal, our court affirmed on November 30, 1950, in Kohagen v. Harwood, 7 Cir., 185 F.2d 276, 30 A.L.R. 2d 201. The action continued in the district court against Moore and Hamilton
 
 
 [2]
 On the same date the complaint was dismissed as to defendant, James R. Moore, on the ground that it failed to state a claim against him upon which relief could be granted. That action formed the subject of a separate appeal to this court by these same plaintiffs in No. 12147. See Boris v. Moore, 253 F.2d 523