**BYRD–FROST, Inc., v. ELDER et al.** *
No. 8551.

Circuit Court of Appeals, Fifth Circuit.
Dec. 2, 1937.

*Rehearing denied Jan. 11, 1938; writ of certiorari denied 58 S.Ct. 646, 82 L.Ed. ——.

Webster Atwell, of Dallas, Tex., for appellant.

W. H. Sanford and Conan Cantwell, both of Dallas, Tex., and W. B. Chauncey, of Jefferson, Tex., for appellees.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

Trip Elder claimed to be the fee-simple owner of a 13½-acre tract of land in Gregg county, Texas. Byrd-Frost, Inc., a Colorado corporation claimed to own a one-fourth of seven-eighths overriding royalty interest in the minerals under said lands, which claim it asserted adversely to Elder's claim of ownership. Prolonged litigation ensued between the parties in the state courts of Texas. Each party desired that the land be developed for oil during the course of the litigation, to accomplish which Byrd-Frost, Inc., assigned its asserted oil and gas lease upon said land to Mazda Oil Company, reserving a one-fourth of seven-eighths overriding royalty. Elder, joined by two grantees who meanwhile had each purchased from him a one-third undivided freehold interest in the land, also executed an oil and gas lease to Mazda Oil Company, reserving a like one-fourth of seven-eighths overriding royalty. Mazda Oil Company then proceeded to develop the land for oil.

As a part of the consideration for the last-mentioned lease by Elder and his grantees to Mazda Oil Company, it was agreed in writing between Elder and his grantees on the one hand, and Byrd-Frost, Inc., on the other, that the proceeds of the one-fourth of seven-eighths overriding royalty interest, to which each asserted a claim of ownership, should be paid over by Mazda Oil Company, or any other purchaser of the oil, to Byrd-Frost, Inc., pending the outcome of the above-mentioned litigation over the title, provided Byrd-Frost, Inc., "shall bind and obligate itself" to repay to Elder and his grantees any money received by Byrd-Frost from the development of the land, if the Elder title should ultimately prevail.

The agreement executed by Byrd-Frost, Inc., after reciting the antecedent facts, contained the following:

"Now, Therefore, Know all Men by these Presents: In consideration of the above and foregoing Byrd-Frost, Inc., a Colorado Corporation, is hereby bound and obligated unto Trip Elder, Ford Chauncey and W. B. Chauncey, in a penal sum equal to the amount of money collected by virtue of the overriding royalty herein mentioned from the purchasers of oil from the tract of land above mentioned up to and including the date Trip Elder, Ford Chauncey and W. B. Chauncey shall be adjudged to be the owners of the overriding royalty herein referred to.

"The condition of this obligation being however, that if Byrd-Frost, Inc., shall finally be adjudged to be the owner of said over-riding royalty, then and in that event this obligation shall be null and void and shall be canceled and shall be of no further force and effect between the parties hereto, otherwise to remain in full force and effect."

The controversy over the title between Byrd-Frost and Elder having resulted favorably to the Elder title, demand was made by Elder and his grantees upon Byrd-Frost for payment of the sum of $12,738.79, that being the sum received by Byrd-Frost in settlement for oil produced on said land. Payment being refused, this suit was brought to recover upon the agreement above quoted.

After termination of the above-mentioned litigation over the title between Byrd-Frost and Elder and before the suit now at bar was instituted, a trespass to try title suit was instituted in a Texas state court by one R. R. Miller, a stranger to the previous litigation, and not a party to the suit at bar, who claimed to own still another oil and gas lease on the above-mentioned lands, which he asserts as superior and adverse to both the Byrd-Frost and Elder titles, and under which he claims the proceeds of the oil from said lands, for which an accounting is sought against Byrd-Frost as to the funds now in the

**32**

hands of the latter, and who with others are made defendants in the Miller suit.

In the Miller suit the Texas state court, prior to the institution of this suit, issued a temporary injunction restraining Byrd-Frost from disposing of any of the monies in its hands arising from the production of oil on said tract.

By plea in abatement below in the present suit, Byrd-Frost unsuccessfully asserted pendency of the Miller suit, and the existing injunction therein, as a defense against present enforcement of the Elder demand for the proceeds of the oil. The plea, as well as a motion to stay this suit, were overruled and judgment went for Elder and his grantees for the sum demanded by them.

Byrd-Frost urges here, as it did below, that it is subjected to the hazard of being twice cast for the same debt in that it is now adjudged to be liable to Elder, and may hereafter be adjudged liable to Miller for the same monies. It asserts that the Miller suit, in which the state court injunction is pending, is in rem or quasi in rem, since it seeks to establish title to the minerals under the land, and to recover the proceeds thereof now held by Byrd-Frost in a separate fund. It asserts that the suit at bar is also in rem or quasi in rem, because it is brought to recover a specific fund in the hands of Byrd-Frost, being the same fund sought by Miller in his suit, over which the state court had assumed jurisdiction before this suit was instituted. This jurisdiction, appellant contends, being prior in time is exclusive, upon the familiar principle that in actions in rem or quasi in rem, where the jurisdiction of a state court has first attached, a federal court of concurrent jurisdiction is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction, control of the res being essential to the full exercise of jurisdiction. Insisting that the court below should have yielded to the asserted prior jurisdiction of the Texas state court in the Miller suit, appellant relies upon United States v. Bank of New York & Trust Company, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331; Penn Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850; Lion Bonding Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 80, 67 L.Ed. 871; Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457; Farmers' Trust Co. v. Lake St. Elevator R. Co., 177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667; Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; and like cases.

■ The last-quoted rule, however, is limited to actions which deal either actually or potentially with specific property or objects. Where a suit is strictly in personam, nothing more than a money judgment being sought, there is no objection to a concurrent action in another jurisdiction, although the same issues are being tried. Stanton v. Embrey, 93 U.S. 548, 23 L.Ed. 983; Gordon v. Gilfoil, 99 U.S. 168, 169, 25 L.Ed. 383. In Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 81, 67 L.Ed. 226, 27 A.L.R. 1077, it is said "a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a [personal] liability does not tend to impair or defeat jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court."

■ The above-quoted agreement between Byrd-Frost and Elder created no specific or segregated fund, no identifiable or tangible res. The agreement rests entirely upon the promise in personam of Byrd-Frost to be "bound and obligated" for a sum of money "equal to" the amount collected by it. It is upon this personal obligation that plaintiffs here sue. They seek to recover, not a specific fund, but a general money judgment. The character of the suit is not altered by the fact that Byrd-Frost voluntarily segregated the monies in a separate fund.

The state court injunction restrained Byrd-Frost "from in any wise disposing of any of said money now held by it (received as proceeds of the oil) until the final termination upon the merits of this (the state court) suit." This injunction does not extend to, and affords no reason why the Federal court should not exercise its jurisdiction to enforce, the personal obligation of Byrd-Frost evidenced by the agreement here sued on, even though the sums recovered in this suit are incidentally measured by the same conditions which created the funds against which said injunction purports to run. Enforcement of this personal liability in no wise defeats, disturbs, nor impairs the jurisdiction of the state court over a res. This suit is not brought to recover, and does not involve the title to, land nor to any identifiable fund or other res. The only matter here at issue is the personal liability of Byrd-Frost on

its obligation above quoted. Only a general money judgment is sought. The suit is therefore in personam. Pendency of the state court suit is no ground for abatement or stay. McClellan v. Carland, 217 U.S. 268, 281, 30 S.Ct. 501, 54 L.Ed. 762; Deming v. Orient Ins. Co. (C.C.) 78 F. 1; Wilcox & Guano Co. v. Phoenix Ins. Co. (C.C.) 61 F. 199; Ogden City v. Weaver (C.C.A.) 108 F. 564; Franceschi v. De Tord (C.C.A.) 71 F.2d 95. Cf. Penn Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850.

The rule relied upon by appellant is designed, not to afford litigants a refuge from threatened double liability in personam, but to avoid unseemly conflicts between courts in the interest of comity.

Affirmed.