**NATIONAL SURETY CORPORATION**

v.

**Hershel CHAMBERLAIN.**

**Civ. A. No. 787.**

United States District Court
N. D. Texas,
San Angelo Division.

March 2, 1959.

W. A. Griffis, Jr., Upton, Upton, Baker & Griffis, San Angelo, Tex., for plaintiff.

Aubrey D. Stokes, Webb, Schulz & Stokes, San Angelo, Tex., for defendant.

ESTES, District Judge.

The jurisdiction of this court is invoked by plaintiff, National Surety Corporation's appeal from an award of the Industrial Accident Board of Texas.[1]

---

1. Art. 8307, Sec. 5, Vernon's Ann.Civ.Stat. of Tex. provides for an "appeal" from the "final ruling and decision" of the Industrial Accident Board by instituting "suit * * * to set aside" the Board's decision or award (within 20

# 592

The award of the Board was in the amount of $2,000. The maximum amount recoverable by defendant Chamberlain on his claim before the Industrial Accident Board for total and permanent disability was $14,035. Chamberlain filed an appeal in State court within the 20 days provided by the Texas Statute. The instant suit was later brought by the National Surety Corporation. Chamberlain has now filed a motion to dismiss this action for want of jurisdiction.

■■ A District Court of the United States is presumed to be without jurisdiction unless the contrary affirmatively appears from the record. Birmingham Post Co. v. Brown, 5 Cir., 1954, 217 F. 2d 127. Its jurisdiction is both limited and derived wholly from the authority of Congress. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; Mason v. Hitchcock, 1 Cir., 108 F.2d 134.[2] It is a part of an independent system for administering justice and state law cannot alter its essential character or function. Byrd v. Blue Ridge Rural Elec. Co-op. Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. "The jurisdiction of the circuit (now District) courts of the United States has been defined and limited by the acts of congress, and can be neither restricted nor enlarged by the statutes of a state." Mexican Central Railway Co. v. Pinkney, 149 U.S. 194, 206, 13 S.Ct. 859, 864, 37 L.Ed. 699.

■ Where "federal jurisdiction is doubtful" the Federal court should dismiss an action, since it "is justified in assuming jurisdiction only if jurisdiction is clearly shown". 1 Barron & Holtzoff Fed. Prac. and Proc. Sec. 109, p. 204–5.

In this diversity action the actual amount in controversy must be established to be within the limits set by Congress. The National Surety Corporation would uphold federal jurisdiction by reliance on the state rule that the measure of the amount in controversy for the purposes of compensation appeals by the insurer is the amount of the original claim before the Industrial Accident Board. Booth v. Texas Employers' Insurance Association, 132 Tex. 237, 123 S.W.2d 322, is cited as evidence of the state rule.

It seems to me illogical to transplant the state standard to this case filed originally in the federal court. At the time of the filing of the complaint, the immediately ascertainable amount in controversy is only $2,000 since that is the only monetary certainty then known between the parties. Chamberlain could come forward and limit the alleged nature of his injuries and incapacities to such a degree and duration that the maximum recovery could not equal as much as $10,000. If Chamberlain saw fit to default and not pursue any claim further in court and the Company should recover a default judgment, setting aside the ruling and award of the Board, the monetary consequence would be $2,000, the amount found by the Board. The same thing stated conversely is that when this suit was filed the only defined liability to that time against the Company was the Board's award of $2,000 and had no appeal been taken by either party, the insurer could have discharged its whole liability by payment of the last named sum. The only monetary relief sought when the suit was filed—the date on which, by Fed.Rules Civ.Proc. Rule 3, 28 U.S.C.A., the action was commenced —was the discharge of a fixed liability of $2,000. It is the only monetary relief sought at that time. Finding jurisdiction here would mean that cases which when commenced do not involve $10,000 may remain pending until some indefi-

days after timely notice of appeal) in "a court of competent jurisdiction * * in the county where the injury occurred * * * the court shall * * * determine the issues * * * instead of the Board * * * upon trial de novo."

2. See McCormick and Chadbourn "Federal Courts" pp 3–9; Philip B. Kurland "The Distribution of Judicial Power Between National and State Courts", 42 Jour.Am. Judicature Soc. 159 (Feb.1959).

nite future date when it appears, if it does appear, that there is, in fact, a sum greater than that involved. Compare: Lorraine Motors Inc. v. Aetna Casualty & Surety Co., D.C., 166 F.Supp. 319.

The order or award of the Industrial Accident Board appealed from has fixed the amount of the insurance carrier's liability at $2,000. "The final award of the board unappealed is entitled to the same faith and credit as a judgment of the court". Ocean Accident & Guarantee Corporation v. Pruitt, Tex.Com.App., 58 S.W.2d 41, 45.

In 1 Moore Fed. Prac. (1938 Ed.) p. 511, it is said:

"There are many cases which illustrate the confusion existing when the plaintiff seeks to gain something difficult to define in terms of money, or when the value of the matter in controversy is different for plaintiff and defendant. Confusion has been enhanced by the varying concepts adopted by courts in determining the exact nature of the matter in controversy.

"It must be said, however, that the prevailing note of the decisions and the impulses of logic and expediency indicate that the *amount in controversy should be determined from the standpoint of the plaintiff*. This is consistent with the doctrine that, since the federal courts are courts of limited jurisdiction, a plaintiff instituting suit in the federal courts must show federal jurisdiction in the complaint. Since the question of *original jurisdiction is contingent on the complaint of the plaintiff*, setting out his cause of action, it would seem to follow that the jurisdictional fact of the *value of that cause of action* or the amount in controversy would be determined from the plaintiff's viewpoint. *Certainly such a standard leads to a greater certainty and simplicity than would ensue should the defendant's viewpoint be injected into the determination.*

"The Supreme Court has recently clarified the problem in St. Paul Mercury Indemnity Co. v. Red Cab Co. (303 U.S. [283] 288, 58 S.Ct. 586, 82 L.Ed. 845):

" 'The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, *the sum claimed by the plaintiff controls* if the claim is apparently made in good faith.' "

Under Fed.Rules Civ.Proc. Rule 3 "Upon the filing of the complaint the action is * * * commenced and pending and the court acquires jurisdiction thereof". 3 Cyc. Fed. Proc. 3 Ed. Sec. 10.07. See Abraham Rotween in 73 U.S.L. Review 21, 25.

In determining whether the requisite jurisdictional amount affirmatively appears, the Court looks to the plaintiff's initial pleading for it. 35 C.J.S. Federal Courts § 82 p. 920; 15 C.J. p. 773. I quote from the following cases so holding:

Cumberland v. Household Research Corp. of America, D.C.Mass., 145 F. Supp. 782 at page 783:

"The jurisdictional amount * * is to be judged as of the time of bringing suit * * * St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845."

Warren v. Employers' Indemnity Corp., D.C.N.D.Cal., 3 F.Supp. 221 at page 222:

"The question must be determined on the basis of whether or not the jurisdictional facts existed at the time the original complaint was filed * * * Carr v. Fife, 156 U.S. 494, 15 S.Ct. 427, 39 L.Ed. 508. * * * Anderson v. Watts, 138 U.S. 694, 11 S.Ct. 449, 34 L. Ed. 1078."

Barnes v. Parker Const. Co., D.C.W. D.Mo., 126 F.Supp. 649, 651.

" * * * the Court to which removal is sought determines the

question solely by looking to the amount in good faith prayed for as damnum in the complaint * * * if the amount therein claimed was less than the jurisdictional requirement, amounts claimed by way of counterclaim could not be considered as increasing the amount of the required sum. Falls Wire Mfg. Co. v. Broderick, C.C.Mo., 6 F. 654."

I am aware of the language in General Accident, Fire & Life Assurance Corporation v. Mostert, 5 Cir., 1942, 131 F.2d 596, to the effect that the amount in controversy was for purposes of that case *assumed* by both the court and the parties to be the largest amount that could be recovered under the claim, such language being incidental to the holding.

Since the decision in the Mostert case, supra, Congress has moved to restrict diversity jurisdiction by the enactment of Public Law 85–554; 72 Stat. 415 Amending Title 28, Sections 1331, 1332 and 1445. It has buttressed this purpose by the addition in the amended statute of subsection (b) of Section 2 which permits the trial judge to impose costs on the "plaintiff" if plaintiff should "recover less than the sum or value of $10,000."

Where the Industrial Accident Board's award against the insurance carrier is less than $10,000, the cost sanction of sub-section (b) could not be justly applied as Congress intended in cases in which the insurance carrier is the "plaintiff who files the case originally in the Federal courts" since it cannot "recover * * * $10,000, computed without regard to any * * * counter claim to which the defendant may be adjudged to be entitled."

It would be illogical for the Court to say to the insurance carrier plaintiff that it has established jurisdiction by pointing to the amount of defendant's claim before the Industrial Accident Board, but that, nevertheless, costs will be cast against the insurance carrier "plaintiff", because it knew when it instituted suit that it could not "recover * * * $10,000" regardless of the amount of any counter claim of the defendant.

On the other hand, it would be unjust for the Court to ignore the fact that the insurance carrier is the "plaintiff", treat the defendant workman as "plaintiff" and cast the costs against him if he should be adjudged entitled to less than $10,000, regardless of what position he may subsequently take in Federal court (or as here, by timely appeal from the Board's award to the State court under Art. 8307, Sec. 5, Vernon's Ann.Civ.Stat. Tex.), because he had presented a claim for more than $10,000 before the Industrial Accident Board.

The legislative history of the 1958 Amendment to the Diversity Act (H. Rept. No. 1706, S.Rept. No. 1830, 85th Cong. 2d Sess. (1958); 1958 U.S.Code Cong. and Admin. News, p. 3099 et seq.) plainly shows the intent of Congress. Senate Report No. 1830, p. 3105 reflects that the Judicial Conference of the United States recommended passage of Public Law 85–554 to "decrease the workload of the federal courts" which "has greatly increased because of the removal of workmen's compensation cases from the State courts to the Federal courts" citing "statistics prepared by the Division of Procedural Studies and Statistics, Administrative Office of the United States Courts" showing "Workmen's compensation suits commenced in the United States district court in Texas during the fiscal year 1957, showing the number of original suits and the number of suits removed from State courts" as follows: "Total cases 2147", "Original actions 982", "Removed from State court 1148", "Remanded, reopened, or received by transfer 17".

Such Report, on page 3106, further states:

"*Workmen's compensation cases arise and exist only by virtue of State laws. No Federal question is involved and no law of the United States is involved in these cases.*"

■ Further, these Reports clearly show that Congress intended to require a realistic appraisal of the amount in controversy for the purpose of diversity jurisdiction, and that the object of the amendment relating to removal of workmen's compensation cases in the same Act, Title 28, Section 1445(c), was to restrict diversity jurisdiction in such cases. The Senate Report at p. 3106, U.S.Code Cong. and Admin. News states:

"Nearly all of the State statutes on workmen's compensation provide summary proceedings for the expeditious and inexpensive settlement of claims by injured workmen against the employer. The procedure provided in such State statutes is not, as a rule, applicable to procedure in Federal courts. When cases are removed to the Federal court the State statutes in many instances, are entirely nullified. For instance, some of these State statutes limit the venue to the place where the accident occurred" (as does Art. 8307, Sec. 5, Vernon's Ann.Civ.Stat.Tex.) "or to the district of the workmen's residence. When removed to the Federal court the venue provisions of the State statute cannot be applied. Very often cases removed to the Federal courts require the workmen to travel long distances and to bring his witnesses at great expense. This places an undue burden upon the workman and very often the workman settles his claim because he cannot afford the luxury of a trial in Federal court.

"Congress itself has recognized the inadvisability of permitting removal of cases arising under its own laws which are similar to the workmen's compensation acts of the States. In the Jones Act, the Fair Labor Standards Act, and the Railway Employers' Liability Act, all of which are in the nature of workmen's compensation cases, the Congress has given the workman the option of filing his case in either the State court or the Federal court. If filed in the State courts the law prohibits removal to the Federal court. The proposed legislation accomplishes this same purpose and grants the same privilege to workmen who are entitled to compensation under the State workmen's compensation act—that is, the workman has the option to file his case in either the Federal or the State court. If he files in the State court it is not removable to the Federal court."

To take jurisdiction of an insurance carrier's suit to set aside an award of the Industrial Accident Board in any case where the workman files his suit to set aside such award in the State court within the 20 days allowed him by Art. 8307, Sec. 5, Vernon's Ann.Civ. Stat. of Tex. would defeat the letter and spirit of Section 5 of Public Law 85–554 reading: *"A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States"*.

Although the workman filed his suit in State court before plaintiff filed this suit, plaintiff insurance carrier urges the court to proceed with the trial of this case under the "race to judgment" doctrine [3]. That theory assumes the Federal court has "concurrent jurisdiction"; and its application would circumvent Section 5 of the Act, and violate the intention of Congress to give the workman his choice of forums.

3. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; Penn. General Casualty Company v. Commonwealth of Pennsylvania ex rel. Schnaden, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850; Byrd-Frost Inc. v. Elder, 5 Cir., 93 F.2d 30, 115 A.L.R. 342; Ermentrout v. Commonwealth Oil Company, 5 Cir., 220 F.2d 527; 14 Am.Jur. p. 442. Public Law 85–554 limits and makes conditional any authority or duty of the Federal court to exercise concurrent jurisdiction where the workman timely appeals to the State court.

596

Senate Report No. 1830, p. 3104 further states:

" * * * This grant of jurisdiction by the Congress to the Federal courts in diversity of citizenship cases was to guard against possible discrimination by State courts in favor of resident over nonresident litigants. This authority to resort to the Federal rather than to the State courts in diversity cases has led to abuse. The great increase in diversity cases in recent years has placed great burdens on the Federal judiciary; as well stated by Mr. Justice Frankfurter in Lumbermen's Mutual Casualty Company v. Florence R. Elbert (348 U.S. 48, 60, 61, 75 S.Ct. 151, 99 L.Ed. 59).

" 'Since diversity jurisdiction is increasingly the biggest source of the civil business of the district courts, the continuance of that jurisdiction will necessarily involve inflation of the number of the district judges. This in turn will result, by its own Gresham's law, in a depreciation of the judicial currency and the consequent impairment of the prestige and of the efficacy of the Federal courts. Madison believed that Congress would return to the State courts judicial power entrusted to the Federal courts 'when they find the tribunals of the States established on a good footing.' 3 Elliot's Debates 536 (1891). Can it fairly be said that State tribunals are not now established on a sufficiently 'good footing' to adjudicate State litigation that arises between citizens of different States, including the artificial corporate citizens, when they are the only resort for the much larger volume of the same type of litigation between their own citizens? Can the State tribunals not yet be trusted to mete out justice to nonresident litigants; should resident litigants not be compelled to trust their own State tribunals? In any event, is it sound public policy to withdraw from the incentives and energies for reforming State tribunals, where such reform is needed, the interests of influential groups who through diversity litigation are now enabled to avoid State courts?'"

It is certain that Congress did not intend the Federal court to have jurisdiction in such a case as this. Federal courts should not tell Congress "We see what you were driving at but you did not use choice words to describe your purpose". United States v. Union Pacific R. Co., 353 U.S. 112, 77 S.Ct. 685, 688, 1 L.Ed.2d 693.

I have also considered the decision of the Supreme Court in Chicago, R. I. & P. R. Co. v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317, which has made doubtful the existence of original jurisdiction in appeal from State Administrative bodies brought by parties in capacities similar to that of the insurer in this action. I quote from 346 U.S. at page 580, 74 S.Ct. at page 295:

"The steps taken (in a condemnation action) by the petitioner were those to perfect an appeal to the Federal District Court * * * The proceeding makes no sense on any other basis, for the action is brought not by the person injured, namely, the landowner, but by the railroad that inflicted the damage. It will be noticed further that there is no prayer for damages but only for a review of the assessment * *. In short, it was an attempt of the petitioner to review the State proceedings on appeal to the Federal District Court."

The quotation fits the actions of the Insurance Company in this case. Indeed, as Judge (now Justice) Whittaker said in Collins v. Public Service Commission of State of Missouri, D.C., 129 F.Supp. 722, 726, a condemnation action, "The analogy between this type of proceeding and the Workmen's Compensation cases is, I think, so close as to be indistinguishable. Generally, they hold that proceedings taken from the Com-

pensation Commission to a court for review are but a continuation, in the Court, of the administrative proceedings and are not such actions as could have been brought in a Federal Court. * * * Snook v. Industrial Commission of Illinois, D.C.Ill., 9 F.Supp. 26; Elsas v. Montgomery Elevator Co., D.C.Mo., 38 F.2d 303; Decker v. Spicer Manufacturing Division of Dana Corp., D.C. Ohio, 101 F.Supp. 207; Flowers v. Aetna Casualty & Surety Co., 6 Cir., 163 F.2d 411."

Appeals by the insurer to a Federal court have been allowed previously in cases arising under the Texas Act on the grounds that the Act contemplated a trial de novo. Ellis v. Associated Industries Ins. Corp., 5 Cir., 1928, 24 F. 2d 809. In view of the Stude decision, supra, it is doubtful that such jurisdiction in fact exists. The Stude case seems to hold clearly enough that a federal district court, being limited to original jurisdiction, is without authority to try and adjudicate a controversy by "appeal" or review de novo prosecuted from administrative proceedings initiated and conducted under the authority of a state statute; and, of course, under such ruling the subject of amount in controversy became altogether immaterial to the decision. As Professor Wechsler has said:

"This method has the virtue of preserving for final resolution by state agencies any issues in the case that turn upon state law; the more numerous or weightier such state ingredients, the more important it may be to have them first determined by state courts." [4]

"No federal question * * * and no law of the United States is involved" in this workmen's compensation case. It arises and exists "only by virtue of State laws" which are "liberally construed in favor of the employee". Travelers Ins. Co. v. McKain, 5 Cir., 186 F.

2d 273, 277.[5] No act of the national or of the state legislature purports expressly to assign jurisdiction of such an appeal to the federal courts.

Mr. Justice Stone, speaking for a unanimous court, in Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 703, 78 L.Ed. 1248 at pages 1253–1254, states:

"From the beginning suits between citizens of different states, * * * could neither be brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specific amount. Cases involving lessor amounts have been left to be dealt with exclusively by state courts, except that judgment of the highest court of a state adjudicating a federal right may be reviewed by this court. Pursuant to this policy the jurisdiction of federal courts of first instance has been narrowed by successive acts of Congress, which have progressively increased the jurisdictional amount. The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. * * * *Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.*"

By determining the amount in controversy "from the standpoint of the plaintiff" as sub-section (b) shows Congress intended, and as Moore, supra, convincingly demonstrates it should be, the amount in controversy in this suit is the value of the right of plaintiff National Surety Corporation to be free

4. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemp.Prob. 216 (1948).

5. American Motorists Ins. Co. v. Steel, Tex.Civ.App., 299 S.W.2d 386, ref. nre; Insurance Company of Texas v. Davis, Tex.Civ.App., 276 S.W.2d 327, ref. nre.

from the $2,000 liability fastened upon it by the award of the Industrial Accident Board. This is the loss that would follow enforcement of that award.

"Due regard for the rightful independence of state governments", and scrupulous confinement "to the precise limits which the statute has defined" should prompt Federal courts to decline the exercise of jurisdiction even if the jurisdictional amount were involved in cases where an appeal is filed in the State court within the time provided by State law, to give effect to Section 5 of Public Law 85–554.

Accordingly, this action should be and is hereby dismissed for want of jurisdiction.

DAVIDSON, Chief Judge, and DOOLEY, District Judge, concur.