**SESSIONS COMPANY, Appellant,**

v.

**W. A. SHEAFFER PEN COMPANY,**
Appellee.

No. 15766.

Court of Civil Appeals of Texas.

Dallas.

Jan. 27, 1961.

Rehearing Denied March 3, 1961.

Thompson, Knight, Wright & Simmons, Daniel R. Rogers and Jerry L. Buchmeyer, Dallas, for appellant.

Ungerman, Hill, Ungerman & Angrist, Dallas, for appellee.

WILLIAMS, Justice.

This is an appeal from a judgment of the trial court sustaining appellee's motion for summary judgment. The parties will be referred to as they appeared in the trial court.

Plaintiff, W. A. Sheaffer Pen Company, sued defendant, The Sessions Company, for a debt covering the purchase price of certain merchandise sold and delivered in interstate commerce to defendant, and for statutory attorney fees. Attached to plaintiff's petition was an invoice showing the shipment of the merchandise from Fort Madison, Iowa to the defendant at Dallas, Texas and providing, inter alia, that the merchandise was not shipped on consignment; that there was no agreement to repurchase the same; and that the sale to the dealer was subject to no other condition than those written on the face of the order and agreed to by the plaintiff. This petition was duly verified in accordance with Rule 185, Texas Rules of Civil Procedure. In view of the questions presented by this appeal we deem it necessary to particularize the pleadings and affidavits of both parties upon which the trial court acted in granting plaintiff's motion for summary judgment.

Defendant's original answer in reply to plaintiff's verified petition consisted of a general denial followed by these allegations:

"Sessions denies that it is indebted to the plaintiff in the amount sued for. Sessions further says that because of the illegal conduct of the plaintiff, hereinafter referred to, Sessions is not indebted to the plaintiff in the amount sued for, or in any other amount."

The defendant then alleges that it was engaged in interstate and intrastate commerce, advertising by catalogues through the mails in which catalogues Sessions publishes the prices for the goods and merchandise offered for sale; that Sessions in the ordinary course of business bought goods, wares and merchandise from the plaintiff which Sessions offered for sale in its catalogues at "prices of Sessions own choosing." Defendant says that plaintiff's illegal conduct consisted of: plaintiff buys and sells goods, wares and merchandise interstate and in intrastate commerce; that plaintiff is a party to various price fixing and re-sale price maintenance agreements with various customers of plaintiff, and, the plaintiff entered into said agreement concerning goods, wares and merchandise which it sells in interstate commerce for re-sale in interstate commerce and in intrastate commerce; in order to further the plaintiff's price fixing and re-sale price maintenance scheme and plans, the plaintiff informed Sessions that Sessions could not advertise the products which Sessions had purchased from the plaintiff at prices of Sessions own choosing and that the plaintiff would refuse to sell Sessions unless Sessions complied with plaintiff's requirements. Sessions continued to advertise the products which it had purchased from the plaintiff at the prices of Sessions own choosing and the plaintiff then carried out a threat to refuse to deal with Sessions; that plaintiff refused further to deal with Sessions in order to further its price fixing and re-sale maintenance scheme and program. This conduct, defendant alleged, violated the Anti-Trust Laws of the United States (Title 15 U.S.C.A. § 1 et seq.) and the Anti-Trust Laws of the State of Texas, Vernon's Ann.Civ.St. art. 7426 et seq., and by reason thereof Sessions claimed it is not indebted to the plaintiff.

The affidavit attached to this answer was made by K. M. Cashion, Jr. who said: "That he is an officer of the Sessions Company; that he is authorized to make this affidavit on behalf of said company; that he knows the facts hereinafter alleged to be true and correct; that he has read and considered the plaintiff's original petition in the above styled suit and says that the claim asserted therein is not just or true in whole or in part *for the reason set out above.*" (Emphasis supplied.)

Plaintiff filed its motion for summary judgment supported by affidavit of Waldo H. Crile, Zone Credit Manager and Supervisor of collection of accounts receivable in the State of Texas, said motion alleging that there are no genuine issues of fact; that the verified account is not denied as provided in Rule 185, T.R.C.P.; that the allegations concerning the violation of the Anti-Trust Laws are insufficient to constitute a valid defense to plaintiff's cause of action.

Defendant, in its reply to the motion for summary judgment, said that there did exist genuine issues of fact between plaintiff and defendant, "all of which are set out in the affidavit of K. M. Cashion, Jr." and says, in the alternative that there is a suit pending in the Federal Court, a copy of said complaint in the Federal Court being attached to the reply, that by reason of the pendency of this suit, which involves violation of the United States Anti-Trust Laws, that this suit in the State court should be abated pending the outcome of that litigation. The affidavit of K. M. Cashion, Jr. attached to the reply to the motion for summary judgment merely reaffirms that the statements made and the sworn answer to the original petition are true and correct, and further says that suit has been filed in the Federal Court by Sessions against W. A. Sheaffer Pen Company seeking treble damages for violation of the Federal Anti-Trust Laws, attaching a copy of said complaint.

■ While defendant's position is not definite and clear it would seem that its first contention is to the effect that its verified general denial would be sufficient to avoid the action of the trial court in granting summary judgment. When all of defendant's pleadings and affidavits are studied as a whole it is quite apparent to us that defendant's only real contention is that plaintiff's debt was not just and due because of the alleged violation on the part of the plaintiff of the State and Federal Anti-Trust Laws. This is evident from a careful study of the affidavit of K. M. Cashion, Jr. in which he specifically states that plaintiff's account is not just and due "for the reasons stated". The only reasons stated are those set out above which do not specify any facts to defeat plaintiff's claim other than the alleged plan and scheme which is said to be in violation of the Anti-Trust Laws of Texas and the United States. Moreover, defendant filed a motion for new trial in this case in which is assigned only two points of error, both dealing with its alleged contention concerning violation of the Anti-Trust Laws. While we recognize the fact that, this being a suit tried before the Court, a motion for new trial was not required and the defendant is not bound on this appeal by the assignments set out in such motion, yet, it seems to be some evidence of defendant's real position and lends opposition to the idea that defendant ever seriously intended to deny the account on any other grounds than the allegations concerning violation of the Anti-Trust Laws.

■ Assuming that defendant does correctly raise the point to the effect that its sworn general denial is sufficient to defeat the granting of a summary judgment, we are unable to agree with this contention and therefore overrule it. In the first place, in our opinion, the sworn denial is insufficient under Rule 185, T.R.C.P., and amounts to nothing more than a denial consisting of conclusions unsupported by facts necessary by the Rule. Rule 185, T.R.C.P. provides that the account shall be taken as prima facie evidence thereof, unless the defendant should file a written denial, under oath, "stating that such claim is not just or true,

in whole or in part, and if in part only, stating the items and particulars which are unjust." Defendant filed no such denial but merely referred back to its denial in its original answer which denies the account because of "illegal conduct of the plaintiff." This question was decided by this Court in Sparkman v. McWhirter, Tex.Civ.App., 1953, 263 S.W.2d 832, 838. In that case the question was presented as to whether the mere filing of a sworn denial inclusive of their pleading was sufficient to overcome the motion for summary judgment. In deciding that a mere general denial is insufficient, Justice Young of this Court said:

"Object of the Rule (Rule 166–A) is to permit movant to pierce formal allegations of fact in pleadings and grant relief by way of summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions, or admissions on file that, as a matter of law, there are no substantive issues of facts presented for trial; Schreffler v. Bowles, 10 Cir., 153 F.2d 1; the underlying principle being that if, under the facts developed, the court at the trial would be required to direct a verdict for the moving party, then a summary judgment should be entered. (citing authorities.)"

This Court then discussed Subd. (e) of Rule 166–A which provides that the supporting and opposing affidavits shall be made on personal knowledge, set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein. The Court concluded:

"In short, an affidavit opposing a motion for summary judgment must meet the requirements of Rule 166–A(e), *a mere general denial being likewise insufficient*. (Emphasis supplied.) Le-Mond & Kreager, Vol. 30, Texas Law Review, pp. 615–618."

"Where a party's motion for summary judgment has support in extrinsic evidence which will sustain his conten-

tion that there is no genuine issue of fact, the opponent should come forward with more than a mere pleading denial, even a sworn one, in order to overcome the force of the motion." McDonald, Civil Practice, Vol. 4, 1958 accumulative supplement, pp. 39–40.

See also an excellent discussion of this question by the Hon. Roy McDonald, author of McDonald's Civil Practice, in Texas Law Review, Vol. 30, p. 297.

We conclude, therefore, that when we "pierce the allegation" of the pleadings of the defendant that the general denial being a mere conclusion, does not meet the requirements of Rule 185, T.R.C.P., or does it meet the requirements of Subd. (e) of Rule 166–A and is therefore insufficient to defeat the award of summary judgment supported by extrinsic evidence.

This brings us to a consideration of defendant's second contention, namely, that the sworn allegations concerning violation of the State and Federal Anti-Trust Laws would effectively bar plaintiff and therefore the trial court erred in granting summary judgment.

Considering the alleged violation of the Texas Anti-Trust Laws, plaintiff countered with the proposition that defendant's allegations are insufficient, as a matter of law, and should therefore be disregarded. We agree with this contention. The Anti-Trust Law is a penalty statute and allegations of violation thereof must state all the statutory requirements with the same degree of certainty that is required in criminal cases. Ford Motor Co. v. State, 1943, 142 Tex. 5, 175 S.W.2d 230.

A careful reading of defendant's allegations concerning violations of the Texas Anti-Trust Laws reveal same to be nothing more than generalities and conclusions that fall far short of the established rule that such be made with the same degree of certainty that is required in criminal cases. In the instant case there is no showing that

plaintiff furnished dealers with suggested prices or specified retail prices. The invoice delivering the merchandise contains specific provisions that the sale to the dealer is subject to no conditions except those on the face of the order, said invoice setting out in full the total quantity, unit, description, discount and unit price list which was to be paid by buyer to the seller for the merchandise. Defendant alleged specifically that it did sell the merchandise at the prices of its own choosing. The allegations of defendant, being insufficient to constitute a claim under the Texas Anti-Trust Laws, the trial court did not err in granting summary judgment. American Refining Co. v. Gasoline Products Co., Tex. Civ.App.1927, 294 S.W. 967 (err. ref.); Gordon v. Busick, Tex.Civ.App.1947, 203 S.W.2d 272; State v. Fairbanks-Morse & Co., Tex.Civ.App. Dallas, 1951, 246 S.W.2d 647, n. r. e; and Arkansas Fuel Oil v. State, 154 Tex. 573, 280 S.W.2d 723.

■ It is no violation of the Anti-Trust Laws for a seller to choose its customers, or refuse to sell at its pleasure. In Portland Gasoline Co. v. Superior Marketing Co., 1951, 150 Tex. 533, 243 S.W.2d 823, 827, in citing the Ford Motor Company case, previously discussed, held:

"There is nothing in such laws (referring to the Texas Anti-Trust Laws) that require a manufacturer to sell its manufactured product to any dealer or purchaser who wishes to buy same. To the contrary, such manufacturer may sell, or refuse to sell, at its pleasure."

See also Jax Beer Co. v. Palmer, Tex. Civ.App.1941, 150 S.W.2d 452; Erickson v. Times Herald Printing Co., Tex.Civ. App.1954, 271 S.W.2d 329; and Robison v. Roberts, Tex.Civ.App.1955, 279 S.W.2d 484.

■ The allegated violation of the Federal Anti-Trust Laws afford no relief to defendant in an action for debt for the merchandise delivered. In Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475, suit was brought for payment of a quantity

of onions. The defendant interposed a defense of violation of the Federal Anti-Trust Laws, setting forth in great detail alleged schemes for price fixing, etc. The Supreme Court of the United States, in overruling the contention, concluded that if the unlawful character under the Sherman Act be assumed, it can hardly be said to enforce the violation of the Act to give legal effect to a completed sale of onions at a fair price, and that in any event where the lawful sale for a fair consideration constitutes an intelligible economic transaction in itself, it would not be inappropriate or violative of the intent of the parties to give it effect even though it furnished occasion for a restrictive agreement of the sort in question.

■ The mere fact that the plaintiff is a member of a trust or unlawful combination created with the intent and purposes of restraining trade or establishing a monopoly will not disable or prevent it from selling goods or services within or affected by the provisions of such trust or combination, and recovering their price of value, either at common law or under statutes making unlawful contracts in restraint of trade or commerce. 36 Am.Jur. Monopolies, Combinations, etc., §§ 173, 198; Johns v. Associated Aviation Underwriters, 5 Cir., 203 F.2d 208, and cases therein cited.

■ In addition to the foregoing, it is well settled that the courts of one jurisdiction will not enforce the penal statutes of another, and that the State courts have no jurisdiction, in the absence of an expressed congressional consent to their exercising jurisdiction, over penalties or forfeitures incurred or arising under the law of the United States. Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123; 23 Am.Jur. § 56, p. 646.

■ Finally, there is no merit to defendant's contention that the State court should have abated the instant suit pending a trial for treble damages action pending in the Federal Court. It has long been recognized that the State court is free to pro-

ceed in its own way and in its own time without reference to the proceedings in any other court. 1 Tex.Jur.2d 37; Byrd-Frost, Inc. v. Elder, 5 Cir., 93 F.2d 30, 115 A.L.R. 342; Bergholm v. Peoria Life Ins. Co., Tex.Civ.App.1933, 63 S.W.2d 1064.

Judgment of the trial court was correct, and it is, accordingly affirmed.