CLARDY 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-004-CV





CLYDE CLARDY, d/b/a BASTROP WEST WATER SYSTEM,



 APPELLANT


vs.





AQUA WATER SUPPLY CORPORATION,



 APPELLEE



 




FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT



NO. 19,114, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING



 




 Clyde Clardy, d/b/a Bastrop West Water System, sued Aqua Water Supply
Corporation in district court for damages arising out of four causes of action. The trial court
rendered a take-nothing summary judgment on all four causes and Clardy now appeals. We affirm
the trial-court judgment.



BACKGROUND


 Clyde Clardy is the developer of two subdivisions, Bastrop County West
Subdivision ("County West") and Bastrop County West Oaks Subdivision ("West Oaks"), both
located in Bastrop County. When Clardy first developed County West in 1979, he allegedly
entered into an agreement with Aqua Water Supply Corporation ("Aqua") whereby Aqua would
provide retail water service to the subdivision. Clardy claims that he and Aqua formed a similar
contract with respect to the West Oaks subdivision in 1984.

 In June 1985, the Texas Department of Health imposed a moratorium which
prevented Aqua from adding any new water connections until Aqua enlarged its facilities to
maintain proper water conditions. The moratorium lasted until October 1986. During that time,
Clardy installed his own water system so that he could provide water service to new purchasers
within his subdivisions. 

 In June 1986, after installing the water system, Clardy applied to the Texas Water
Commission ("Commission") for a certificate of convenience and necessity ("CCN"). Aqua
opposed Clardy's application, claiming that Clardy was seeking to provide water service to an
area already certified to Aqua, and requesting that the Commission issue a cease and desist order
preventing Clardy from adding customers to his water system. 

 In October 1987, the Commission granted Clardy's CCN application as to West
Oaks and thirteen lots in County West. The Commission granted Aqua the right to provide water
to the remaining lots in County West. Clardy subsequently filed suit against Aqua, alleging that
Aqua: (1) breached a contract to supply water service to County West subdivision; (2) breached
a contract to provide water service to West Oaks subdivision; (3) tried to monopolize the retail
water service business in Bastrop County; and (4) wrongfully interfered with Clardy's existing
and prospective business relationships, and with Clardy's right to petition the government to
provide water service. The trial court entered judgment that Clardy take nothing as to each of the
four causes of action. Clardy now appeals.



DISCUSSION


A. Reply Point.

 Before addressing the merits of Clardy's points of error, we first address Aqua's
reply point in which Aqua urges that this Court erred in allowing Clardy to file his transcript after
Clardy filed an untimely motion for extension of time. The district-court judge signed the
judgment in this cause on November 5, 1990, and neither party filed a motion for new trial nor
a request for findings of fact or conclusions of law. Thus, Clardy should have filed the transcript
with this Court on or before January 4, 1991. See Tex. R. App. P. 54(a) (Pamph. 1991). On
January 14, 1991, Clardy filed a motion for extension of time to file the transcript pursuant to
Rule 54(c). See Tex. R. App. P. 54(c) (Pamph. 1991). Because the motion did not explain the
delay in filing the transcript, this Court ordered Clardy to file an amended motion for extension
and set January 30, 1991, as the filing date. Clardy timely filed the amended motion, which this
Court granted. Aqua contends that this Court had no authority to extend the time for filing a
motion for extension of time beyond the fifteen-day period prescribed in rule 54(c). 

 We agree that this Court has no authority to consider an untimely motion for
extension of time to file a transcript. See Chojnacki v. Court of Appeals, 699 S.W.2d 193, 193
(Tex. 1985). We further agree that if this Court had denied Clardy's original motion, the denial
would not have extended the time period to file a second motion curing the defect. See Sifuentes
v. Texas Employer's Ins. Ass'n, 754 S.W.2d 784, 788-89 (Tex. App. 1988, no writ). But here,
Clardy filed his motion within the prescribed time period and this Court ordered that Clardy file
an amended motion. In requesting an amended motion without denying Clardy's original motion,
this Court impliedly granted the original motion.

 The Texas Supreme Court has consistently held with respect to methods of
perfecting appeal that the factor which determines whether jurisdiction has been conferred on the
appellate court is not the form or substance of the instrument, but whether the instrument was
"filed in a bona fide attempt to invoke appellate court jurisdiction." Grand Prairie Sch. Dist. v.
Southern Pines, 813 S.W.2d 499, 500 (Tex. 1991); Walker v. Blue Water Garden Apartments,
776 S.W.2d 578, 581 (Tex. 1989). Timely filing of a transcript is another step in invoking
appellate jurisdiction. See Oldaker v. Locke, 528 S.W.2d 71, 76 (Tex. Civ. App. 1975, writ ref'd
n.r.e.). We believe that Clardy made a bona fide attempt to timely file his motion, and we
conclude that it is proper to avoid a narrow construction of rule 54(c), which would end an appeal
that should be heard on the merits. Accordingly, we overrule Aqua's reply point.



B. Summary Judgment.

 In a single point of error, Clardy contends that the trial court erred in granting
Aqua's motion for summary judgment. In a summary judgment case, this Court must determine
whether the movant met his burden for summary judgment by establishing that there exists no
genuine issue of material fact and that he is entitled to judgment as a matter of law. Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). The court must decide whether
a disputed material fact issue precludes summary judgment, accepting as true the non-movant's
version of the facts as shown by the record and the admissible summary judgment proof. The
court must indulge every reasonable inference in favor of the nonmovant and resolve any doubt
in his favor. Id. at 548-49. Clardy asserts four claimed issues of material fact to which we apply
this standard.



1. Breach of Contract--County West Subdivision.

 Clardy asserts a claim against Aqua for breach of a contract to provide water
services to the County West subdivision. In its motion for summary judgment, Aqua alleged that
because there was no contract, Aqua is entitled to summary judgment as a matter of law on this
claim. Aqua contends that it could not have formed a contract with Clardy because the parties
had no "meeting of the minds" as to the essential terms of this alleged contract. The trial court
granted summary judgment in favor of Aqua on this cause of action. 

 Now Clardy contends on appeal that there are genuine issues of material fact
regarding whether Aqua contracted with Clardy to provide water service upon request to
purchasers of lots within County West. Clardy argued in his response to the motion for summary
judgment that such a contract was established through a series of letters between Clardy and Aqua
representatives. 

 The question of whether correspondence constitutes a contract, rather than
preliminary negotiations without binding force until reduced to formal contract form, is one of
law. Hegar v. Tucker, 274 S.W.2d 752, 754 (Tex. Civ. App. 1955, writ ref'd n.r.e.). We have
reviewed this series of letters. The trial court could have concluded, and we agree, that the letters
do not rise to the level of a contract because they do not contain the essential terms of an
agreement. They are, at best, evidence of preliminary plans or negotiations to provide water
service to this subdivision.


2. Breach of Contract -- West Oaks Subdivision.

 Next, Clardy asserts that there is a genuine issue of material fact as to whether
Aqua contracted with Clardy to provide water service to his second subdivision, West Oaks. In
a deposition, Clardy recounted a conversation he had with Jim Trigg, Aqua's general manager,
before purchasing the land for West Oaks. During that conversation, Clardy asked Trigg whether
Aqua would have the capacity to provide water service if Clardy chose to purchase and develop
the land, and Trigg replied that Aqua would provide water to the subdivision if Clardy complied
with Aqua's written rules and requirements for adding land developments to Aqua's system. 
Clardy asserts that this conversation, combined with Aqua's rules and regulations for extending
water utility service into new developments, created the contract at issue. Clardy contends that
Aqua's development rules constituted an offer to make a contract and that he accepted Aqua's
offer as provided by the development rules. 

 Aqua does not dispute the substance of this conversation between Trigg and Clardy. 
To the contrary, Aqua successfully moved for summary judgment on the strength of Clardy's
deposition, contending that the parties never formed a contract because Clardy never accepted
Aqua's offer or, alternatively, because there was no mutuality of obligation.

 We believe that this conversation, rather than creating a contract, also represents
preliminary negotiations by the parties. But even if we accept as true Clardy's assertion that
Aqua's development rules constituted an offer to do business, the record firmly establishes that
Clardy never performed the conditions precedent to contract formation. A condition precedent
in the law of contracts may be either a condition which must be performed before the parties'
agreement becomes a binding contract or a condition which must be fulfilled before the duty to
perform an existing contract arises. City of Houston v. West, 563 S.W.2d 680 (Tex. Civ. App.
1978, writ ref'd n.r.e.).

 Before Aqua would provide water service, Clardy knew that he had to perform the
following duties and services as set forth in Aqua's rules and regulations for extending water
utility service into new developments: (1) hire an engineer and design internal water lines to the
subdivision; (2) obtain Aqua's approval of the engineering design; (3) install the lines according
to the approved design; and (4) pay Aqua a $600 per lot capital recovery fee. The uncontroverted
summary judgment proof shows that Clardy never complied with any of these rules and
regulations, that Clardy believed Aqua had no commitment to provide water until Clardy
performed these duties, and that Clardy never undertook any other obligation to Aqua. Because the summary judgment proof in this case is uncontroverted, it is the duty
of the trial judge to decide whether the facts in evidence give rise to a contract. See El Paso
County Water Improvement Dist. v. Grijalva, 783 S.W.2d 736, 739 (Tex. App. 1990, writ
denied). The trial judge could have determined that because the summary judgment proof shows
that Clardy did not perform the conditions relating to contract formation, the parties had no
contract as a matter of law. We agree.



3. Monopoly. 

 Clardy next claims that there are genuine issues of material fact as to whether Aqua
attempted to monopolize the retail water business in Bastrop County in violation of the Texas
Antitrust Act, Tex. Bus. & Com. Code Ann. § 15.05(b) (1987). However, one of the grounds
upon which Aqua moved for summary judgment on this monopoly claim is that Clardy failed to
state a cause of action for violations of the Texas antitrust statutes. Aqua filed a special exception
to Clardy's third amended original petition because Clardy failed to allege that Aqua does not fall
within any of the statutory exceptions to the antitrust statute. The trial court's order on special
exceptions directed Clardy to amend his pleadings to cure the pleading defects on the antitrust
cause of action. Nevertheless, Clardy's fourth amended original petition again lacked allegations
that Aqua does not fall within any of the statutory exceptions to the antitrust statute.

 Ordinarily, a court should not grant summary judgment on the basis of a pleading
deficiency that can be cured by amendment. Texas Dept. of Corrections v. Herring, 513 S.W.2d
6, 10 (Tex. 1974). However, summary judgment is proper when a party, after given the
opportunity to amend, still fails to state a cause of action. Id. 

 Because the Texas antitrust law is a penalty statute, allegations that a party has
violated the statute must state all of the statutory requirements with the same degree of certainty
required in criminal cases. Ford Motor Co. v. State, 175 S.W.2d 230, 233 (Tex. 1943); Sessions
Co. v. W. A. Shaeffer Pen Co., 344 S.W.2d 180, 183 (Tex. Civ. App. 1961, writ ref'd n.r.e.). 
The state must negate statutory exceptions in a criminal indictment, and correspondingly, a
plaintiff alleging an antitrust statute violation must specifically plead and prove that the defendant
does not fall within a statutory exception. Cf. McElroy v. State, 720 S.W.2d 490, 493 (Tex.
Crim. App. 1986). 

 The Texas Antitrust Act contains the following express exemption:



Nothing in this section shall apply to actions required or affirmatively approved by
any statute of this state or of the United States or by a regulatory agency of this
state or of the United States duly acting under any constitutional or statutory
authority vesting the agency with such power.



Tex. Bus. & Com. Code Ann. § 15.05(g) (Supp. 1992). Because Clardy did not specifically plead
and prove this statutory exception after being given the opportunity to amend, the trial court could
have granted summary judgment for failure to state a cause of action.



4. Tortious Interference.

 Finally, Clardy asserts that there exist genuine issues of material fact as to whether
Aqua tortiously interfered with Clardy's existing and prospective business relationships, and with
Clardy's right to petition the government to provide water service.

 According to Clardy, at the time he installed his water system, there was
considerable demand for water service in Bastrop County which Aqua could not meet because the
health department moratorium prevented Aqua from adding new connections. After Clardy
completed construction of Bastrop West Water System, he applied to the Commission for a CCN. 
Aqua intervened and opposed this application on the basis that Aqua already held a CCN covering
Clardy's subdivisions. Aqua also filed with the Commission a motion requesting that the
Commission order Bastrop West Water System to cease and desist construction because it
interfered with Aqua's service to County West. Although Bastrop West Water System was
ultimately awarded a CCN, Clardy asserts that Aqua's actions effectively delayed Clardy's ability
to provide water service to prospective purchasers in West Oaks until there was a diminished
market for sales. Clardy also alleges that some purchasers of lots in County West threatened him
with lawsuits because they were unable to obtain water service from Aqua.

 Texas law protects existing as well as prospective contracts from tortious
interference. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989). However, a
defendant may assert a claim of legal justification or excuse as an affirmative defense to
interference with contractual relations. Id. at 690. Under this defense, "one is privileged to
interfere with another's contract (1) if it is done in the bona fide exercise of his own rights, or (2)
if he has an equal or superior right in the subject matter to that of the other party." Id. at 691. 

 Aqua successfully moved for summary judgment on the basis that it had an equal
or superior right to provide water service to the area for which Clardy sought a CCN. Although
Aqua did not have a CCN for the area encompassing Clardy's subdivisions at the time Clardy filed
his application, Texas law provides that a water utility may extend its lines into contiguous
territory without first securing a CCN if no other utility is serving the territory or has a CCN for
it. 1985 Tex. Gen. Laws, ch. 795, § 3.005, at 2799 (Tex. Water Code Ann. § 13.243(a) (1988),
since amended). The summary judgment proof established that Aqua had a CCN to serve portions
of Bastrop County and, through a contiguous extension, was legally providing water to County
West subdivision at the time Clardy sought a CCN for that area.

 Texas law allows "affected persons" to intervene in CCN hearings. Tex. Water
Code § 13.246(a). The Water Code defines "affected persons" to include competing utilities and
utilities that desire to enter into competition. Tex. Water Code § 13.002(7). Aqua's intervention
at the TWC was a legitimate means of protecting its existing rights to provide water service and
establishing its desire to expand service. Because Clardy and Aqua were competing to serve the
same areas, Aqua had a legal right to intervene at the hearing on the CCN application for Bastrop
West Water System. We believe that, as a matter of law, Aqua had at least an equal right in the
subject matter that forms the basis of Clardy's tortious interference claim. Therefore, Aqua
established its defense of legal justification or excuse. 

 On appeal, Clardy contends that the trial judge incorrectly granted summary
judgment because Clardy successfully controverted Aqua's defense. First, Clardy asserts that
because the health department moratorium denied Aqua the right to add new connections, Aqua
could not have had an equal or superior right to supply water to the areas in question. However,
the Health Department's letter to Aqua regarding the moratorium stated in relevant part:



It is our recommendation that no new connections to the Aqua Water System be
permitted until adequate facilities are provided to ensure the maintenance of proper
water pressures throughout the system. 


Any requests for additional connections must be accompanied by a statement from
your engineer documenting that no adverse effects on the water quantity or
pressure would result from the connection to the system.



This letter indicates that Aqua could add new connections as long as it enlarged its facilities to
maintain proper water conditions. The summary judgment proof established that Aqua was in the
process of expanding its capacity at the time Clardy sought his CCN application and that the
Commission ultimately granted Aqua the right to serve future County West customers. Because
the moratorium conditioned, but did not extinguish, Aqua's right to supply water, we conclude
that this point does not raise a material issue of fact regarding Aqua's affirmative defense. 

 Next, Clardy asserts that he controverted Aqua's defense by showing that Aqua
falsely claimed to the Commission that it possessed a CCN to serve the two subdivisions. Aqua
admits that it incorrectly stated in letters and in motions to the Commission that it held a CCN to
serve customers on all land west of Bastrop, Texas. During the TWC hearing on the Bastrop
West Water System CCN application, the Commission offered evidence that Aqua's CCN did not
cover Clardy's subdivisions. Aqua subsequently filed its own CCN application for County West
and withdrew opposition to Clardy's request that Bastrop West Water System have exclusive water
rights in West Oaks.

 Since the Commission itself clarified the scope of Aqua's CCN during the
administrative hearings on the Bastrop West Water System CCN, the Commission clearly had
accurate information upon which to base its decision. Moreover, Clardy does not contend that
Aqua knowingly misrepresented the scope of its certificated area and even concedes that Aqua
could have made the misrepresentation mistakenly. We cannot say that the misrepresentation
creates a material fact issue which negates Aqua's affirmative defense.

 Clardy also asserts that Aqua's breach of contract with Clardy to supply water is
a fact which controverts Aqua's affirmative defense. Since we hold that there was no contract,
and thus no breach of contract, we find this argument without merit. Moreover, the courts have
held that a defendant's breach of his own contract with a plaintiff is not a basis for the tort of
interference with contractual rights. Barker v. Brown, 772 S.W.2d 507, 510 (Tex. App. 1989,
no writ).

 Finally, Clardy asserts that he controverted Aqua's defense by showing that Aqua
was trying to make an example out of Clardy in order to deter others from putting in competing
water systems. However, Clardy points us to no summary judgment proof in support of this
assertion. 

 We conclude that Aqua established its legal justification for intervening in Clardy's
efforts to obtain a CCN for Bastrop West Water System, but Clardy produced no summary
judgment evidence to raise a fact question regarding the lack of justification.



CONCLUSION


 For the preceding reasons, we overrule Clardy's point of error. We affirm the
trial-court judgment.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: February 26, 1992

[Do Not Publish]